IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 24-cv-02013-NYW-CYC

AMY MCCRAKEN,

    Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS, ELBERT COUNTY, COLORADO,

    Defendant.

---

## ORDER

---

This matter is before the Court on Defendant's Motion to Dismiss, [Doc. 17], and Plaintiff's Motion for Leave to File First Amended Complaint (the "Motion to Amend"), [Doc. 63]. The Court has reviewed the Motions and the related briefing. For the reasons set forth in this Order, the Motion to Amend is respectfully **DENIED** and the Motion to Dismiss is respectfully **GRANTED in part** and **DENIED in part**.

### BACKGROUND

This case arises out of events during and after the detention of Plaintiff Amy McCraken ("Plaintiff" or "Ms. McCraken") in the Elbert County Jail, which is located in Kiowa, Colorado and is operated by the Elbert County Sheriff's Office ("ESCO"). [Doc. 1 at ¶¶ 13, 16].[1] Kiowa "is in an extremely remote area of rural Colorado," with no public transportation, taxis, or private transportation services like Uber or Lyft. [*Id.* at ¶¶ 9–11].

---

[1] The Court draws these facts from the Complaint, [Doc. 1], and presumes they are true for purposes of this Order.

The town of Kiowa is surrounded by large plains and rural county roads.  [*Id.* at ¶ 12].

On August 1, 2022, Ms. McCraken was pulled over by ESCO deputies and arrested for driving with a revoked license and displaying a canceled license plate.  [*Id.* at ¶¶ 20–23, 27].[2]  She was transported to the Elbert County Jail and booked into custody at about 10:00 p.m.  [*Id.* at ¶¶ 32, 44].  ESCO deputies told Ms. McCraken that once the intake process was complete, she would be able to use the telephone to arrange her bond and obtain transportation home.  [*Id.* at ¶ 37].  However, it was not until approximately 2:00 a.m. that ESCO officials permitted Ms. McCraken to use the phone.  [*Id.* at ¶ 47].  At that hour, Ms. McCraken had difficulty reaching anyone who was awake or available to take her call.  [*Id.* at ¶ 48].  She eventually reached her son, who helped pay her bond to secure her release, but her son was unable to pick her up from the jail because he was approximately 60 miles from the jail and without an available car.  [*Id.* at ¶¶ 49–51].  Ms. McCraken informed ESCO deputies that she was unable to obtain a ride home and asked the deputies if they could transport her home.  [*Id.* at ¶¶ 52–53].  The deputies denied Ms. McCraken's request and ordered her to leave the jail.  [*Id.* at ¶¶ 53, 55].

Ms. McCraken uses a lower-limb prosthetic device on her right leg to ambulate.  [*Id.* at ¶ 7].  All of the ESCO deputies working at the jail on August 1 saw Ms. McCraken's prosthetic leg and "observed her limited ability to walk."  [*Id.* at ¶¶ 35–36].  Thus, the deputies denied Ms. McCraken's request for a ride home despite their knowledge of Ms. McCraken's disability, her limited mobility, the rural location of the jail, and the lack of available transportation.  [*Id.* at ¶ 54].  Plaintiff suggests that this is contrary to the practice

---

[2] Ms. McCraken was later cleared of any wrongdoing and all of the charges related to her arrest were dismissed.  [Doc. 1 at ¶¶ 96–97].

2

of law enforcement officers in other jurisdictions, who she alleges "routinely provide community members transportation in a variety of other contexts," such as when a civilian runs out of gas, is intoxicated and cannot safely transport themselves, or feels vulnerable to attack or harassment. [*Id.* at ¶¶ 68–71].

Ms. McCraken had "no choice but to begin an 8.8 mile walk home in the dead of night, alone and unprotected," wearing only a tank top, shorts, and flip-flops. [*Id.* at ¶¶ 59, 76]. She eventually reached her home around 8:00 a.m. on August 2, 2022. [*Id.* at ¶ 77]. By the time she reached home, her prosthetic leg was broken, she had significant pain and soreness in her left leg and left foot, and she had severe bruises, blisters, swelling, and abrasions on her right limb. [*Id.* at ¶¶ 78–81]. She received medical treatment for her injuries and learned she "likely suffered a stress fracture in her left foot and nerve damage in her residual right limb." [*Id.* at ¶ 85]. Ms. McCraken's pain did not abate for weeks. [*Id.* at ¶ 86].

Plaintiff sued the Board of County Commissioners for Elbert County, Colorado ("Defendant"), asserting two claims: (1) a claim under Title II of the Americans With Disabilities Act ("ADA") for failure to make reasonable modifications; and (2) a claim under the Colorado Anti-Discrimination Act ("CADA") for disability discrimination. [*Id.* at ¶¶ 98–125]. On October 7, 2024, Defendant filed its Motion to Dismiss under Rule 12(b)(6). [Doc. 17]. And on April 28, 2025, Ms. McCraken filed her Motion to Amend, seeking leave of Court to include new factual allegations to her Complaint. [Doc. 63]. The Motions are ripe for resolution.[3]

---

[3] On December 27, 2024, Plaintiff filed an opposed Motion for Leave to File Sur-Reply to Defendant's Motion to Dismiss, arguing that a surreply was necessary to address what she believes are new arguments raised in Defendant's reply brief. [Doc. 27 at 3 (the

**LEGAL STANDARDS**

**I.      Motion to Amend**

When a party files a motion to amend after the expiration of the deadline to amend pleadings, the Court considers the request under Rules 15 and 16 of the Federal Rules of Civil Procedure.  First, the Court determines whether the movant has demonstrated good cause to amend the Scheduling Order pursuant to Rule 16(b).  *See Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1242 (10th Cir. 2014).  Then, the Court considers whether the proposed amendment is appropriate under Rule 15(a).  *Id.*

Rule 16(b) provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).  "In practice, this standard requires the movant to show the 'scheduling deadlines cannot be met despite [the movant's] diligent efforts.'"  *Gorsuch*, 771 F.3d at 1240 (alteration in original) (quoting *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001)).  This burden is satisfied when, for example, a party learns of new information through discovery.  *Id.*  "Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party.  Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment." *Colo. Visionary Acad. v. Medtronic, Inc.*, 194

---

"Motion to File a Surreply")].  When a party advances new arguments or relies on new materials in a reply brief, the Court may either permit a surreply or disregard the new arguments or evidence.  *Green v. U.S. Anesthesia Partners of Colo., Inc.*, No. 22-1319, 2023 WL 7015660, at *7 (10th Cir. Oct. 25, 2023).  "[A] district court abuses its discretion only when it both denies a party leave to file a surreply and relies on new materials or new arguments in the opposing party's reply brief." *Conroy v. Vilsack*, 707 F.3d 1163, 1179 n.6 (10th Cir. 2013).  Here, the Court exercises its discretion to disregard any new arguments raised in the reply brief.  Accordingly, there is no need for a surreply, and the Motion to File a Surreply is **DENIED as moot**.  Moreover, Defendant's Amended Reply to Response to Motion to Dismiss, [Doc. 35], is **STRICKEN** as improperly filed, as it was filed without leave of Court and six weeks after Defendant's reply brief deadline.

F.R.D. 684, 687 (D. Colo. 2000) (quotation omitted).

In addition, Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Court may refuse leave to amend upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). A general presumption exists in favor of allowing a party to amend its pleadings, *see Foman v. Davis*, 371 U.S. 178, 182 (1962), but whether to allow amendment is within the trial court's discretion, *Burks v. Okla. Publ'g Co.*, 81 F.3d 975, 978–79 (10th Cir. 1996).

## II. Motion to Dismiss

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quotation omitted). The plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).

## ANALYSIS

### I. The Motion to Amend

Because an amended pleading supersedes the original and renders any motion

5

directed at the original pleading moot, *see Scott v. Buckner Co.*, 388 F. Supp. 3d 1320, 1323 (D. Colo. 2019), the Court addresses Plaintiff's Motion to Amend before turning to Defendant's Motion to Dismiss.  Ms. McCraken moves to amend her Complaint to insert allegations that after she was arrested in February 2022, an ESCO employee gave her a ride home in his official vehicle.  *See* [Doc. 63-1 at ¶¶ 68–70, 107, 113, 123].  In this case, the Motion to Amend was filed on April 28, 2025, [Doc. 63], after the October 18, 2024 deadline to amend pleadings, [Doc. 15 at 8].  Accordingly, the Court must determine whether good cause exists to amend the Scheduling Order under Rule 16(b)(4) before turning to whether amendment is appropriate under Rule 15.  *Gorsuch*, 771 F.3d at 1242.

Ms. McCraken argues that good cause exists to amend the Scheduling Order because the proposed amendment is "based on information her counsel discovered during Defendant's April 7, 2025 deposition of" Plaintiff.  [Doc. 63 at 5].  During that deposition, Ms. McCraken stated that ESCO deputies gave her a ride home after a February 2022 arrest.  [*Id.*].  Plaintiff's counsel represents that he "did not know of this fact" before the deposition.  [*Id.*].  Plaintiff further asserts that it was not until Defendant filed its Motion to Dismiss—on October 7, 2024—that Plaintiff "learned that Defendant's position [is] that it *never* has provided anyone a ride home upon their release from jail, disabled or not."  [*Id.*]; *see also* [Doc. 17 at 10 (Defendant arguing that "[p]roviding a released inmate a ride home from the jail at two in the morning is not a service, activity, or program that the Elbert County Sheriff's Office engages in for anyone, disabled or not")].  Ms. McCraken argues that "the relevance and importance of the newly discovered factual allegations that form the basis of this amendment has evolved as this litigation has evolved," and that this purported discovery of new information constitutes good cause to

6

amend the Scheduling Order. [Doc. 63 at 8].

Defendant responds that there is no good cause to amend the Scheduling Order because, based on Ms. McCraken's own representations, she was aware of the information she seeks to include in an amended pleading at the time her Complaint was filed. [Doc. 69 at ¶¶ 17–19]. It argues that this alone is sufficient to deny the Motion to Amend. [*Id.* at ¶ 20]. In her reply brief, Ms. McCraken maintains that her requested amendment is not unreasonably late because her litigation strategy changed throughout the case. [Doc. 70 at 4–5].[4]

The Court respectfully agrees with Defendant and finds that Plaintiff has not met her burden to demonstrate good cause to amend the Scheduling Order under Rule 16. Based on Plaintiff's own representations, she was aware that an ESCO deputy drove her home after an arrest in February 2022—over two years before the Complaint was filed. Courts routinely hold that good cause is lacking where a plaintiff knew of information at the time she filed her complaint but simply failed to include that information in her pleading. *See, e.g., Gorsuch*, 771 F.3d at 1240 (good cause does not exist "[i]f the plaintiff knew of the underlying conduct" but simply failed to raise claims about that conduct); *Finke v. Ensign Grp., Inc.*, No. 19-cv-02056-DDC-KGG, 2019 WL 4640588, at *3–4 (D. Kan. Sept. 24, 2019); *Clyde v. My Buddy the Plumber Heating & Air, LLC*, No. 2:19-cv-00756-JNP, 2021 WL 3931374, at *4 (D. Utah Sept. 2, 2021). To the extent Plaintiff argues that any delay was justified because *her attorney* did not learn of the February

---

[4] Ms. McCraken argues that Defendant bears the burden of showing that amendment is improper under Rule 15 and "fails to show that Ms. McCraken's proposed amendment is unduly delayed." [Doc. 70 at 1–2]; *see also* [*id.* at 4–6]. This assertion ignores the fact that it is *Ms. McCraken's* burden to demonstrate good cause to amend the Scheduling Order. *Gorsuch*, 771 F.3d at 1240.

7

2022 transport until April of this year, "Plaintiff does not cite to any authority, and the Court is unaware of any authority, holding that the relevant inquiry is when a plaintiff's attorney learns of new information, as opposed to when Plaintiff herself learned." *Collins v. Ascension Via Cristi Hosps., Inc.*, No. 22-cv-01223-JAR-RES, 2023 WL 2734234, at *4 (D. Kan. Mar. 31, 2023).

Moreover, it is not relevant when Plaintiff first learned of Defendant's position that it had never provided a ride home to an arrestee. "[W]hat the Defendant's theory of defense was or when it was adopted is not a relevant inquiry" in the Rule 16 analysis. *Fountain Valley Inv. Partners, LLC v. Cont'l W. Ins. Co.*, No. 14-cv-01906-MSK-NYW, 2015 WL 7770772, at *2 (D. Colo. Dec. 3, 2015). "The question is when the Plaintiff first learned of new information that [she] sought to include in [her] pleadings." *Id.* And in any event, Defendant's Motion to Dismiss was filed in October 2024, six months before Plaintiff sought leave to amend. Plaintiff's counsel presumably provided Ms. McCraken a copy of the Motion to Dismiss when it was filed, and if the Motion to Dismiss contained some assertion that was contrary to, or required supplementation from, information Plaintiff possessed at the time, it was incumbent on Plaintiff to inform her counsel of such.

Accordingly, Plaintiff has not demonstrated good cause to amend the Scheduling Order, which is a sufficient basis to deny the Motion to Amend. *See Gorsuch*, 771 F.3d at 1242 ("Having concluded [the movants] lacked good cause to amend their pleadings after the scheduling order deadline, we need not reach the Rule 15(a) issue, and decline to do so."). For this reason, the Motion to Amend is respectfully **DENIED**.[5]

---

[5] Even if the Court were to consider the new factual allegations in the proposed First Amended Complaint, *see* [Doc. 63-1], it would make no substantive difference to the Court's analysis with respect to Defendant's Motion to Dismiss.

8

## II. The Motion to Dismiss

In its Motion to Dismiss, Defendant raises various arguments advocating for dismissal of Plaintiff's ADA claim. [Doc. 17].[6] The Parties agree that Plaintiff raises a failure to accommodate claim. [*Id.* at 7; Doc. 22 at 1–2 ("Ms. McCraken seeks redress for the ESCO's failure to accommodate her disability under Title II of the [ADA].")]. To state an ADA claim based on a failure-to-accommodate theory, the plaintiff must allege that (1) she is a qualified individual with a disability; (2) she was "excluded from participation in or denied the benefits of some public entity's services, programs, or activities"; and (3) that exclusion or denial of benefits "was by reason of [her] disability." *Brooks v. Colo. Dep't of Corr.*, 12 F.4th 1160, 1167 (10th Cir. 2021).

To start, Defendant argues that it complied with the ADA "at all times while Plaintiff was in [ESCO] custody at the Elbert County Jail" because Plaintiff "was given appropriate consideration while in the jail." [Doc. 17 at 5, 7 (emphasis omitted)]. Defendant contends that Plaintiff "chose to post bond at approximately 2:00 a.m., knowing [her son] would not pick her up from the jail" and that her injuries were caused by "[t]he choice she made after bonding out in the middle of the night" and "were in no way the result of her disability." [*Id.* at 7]. These arguments do not attack the sufficiency of any specific element of an

---

[6] At the end of its Motion, Defendant "requests that Plaintiff's claims against it be dismissed with prejudice." [Doc. 17 at 15]. However, Defendant does not assert any argument directed at Plaintiff's CADA claim. *See generally* [*id.*]. In its reply brief, it suggests that it moves for dismissal of both claims "because challenges to the ADA and CADA require the same analysis." [Doc. 26 at 1]. The problem with this assertion, however, is that this statement is not made in the Motion to Dismiss; in fact, neither Plaintiff's CADA claim nor the statute itself is mentioned *whatsoever* in the Motion to Dismiss. *See generally* [Doc. 17]. The Court does not consider arguments raised for the first time in a reply brief. *White v. Chafin*, 862 F.3d 1065, 1067 (10th Cir. 2017). And in any event, as set forth in this Order, the Court finds that dismissal of the ADA claim under Rule 12(b)(6) is largely unwarranted.

9

ADA claim, ignore allegations in the Complaint, and are not directly supported by any legal authority.  These arguments are thus insufficient to show that dismissal of the ADA claim pursuant to Rule 12(b)(6) is appropriate.

Defendant also argues that to the extent Ms. McCraken's ADA claim is based on Defendant's alleged refusal to provide her with an earlier phone call, the claim "is based on mere speculation."  [*Id.* at 8].  In Defendant's view, Ms. McCraken "cannot establish that allowing her to make a call at 10:00 p.m. would have avoided any injury, and she has not asserted that anyone specifically would have been available to pick her up later in the evening if she had called at 10:00 p.m." [*Id.* at 8].[7]

But Defendant's argument is itself speculative.  Defendant insists that "[i]f jail staff had allowed Ms. McCraken to utilize the phone earlier, she would not have been able to arrange for her bond to be paid since the amount of the bond was not yet known, and she would not have been able to tell anyone when, or if, she would be released."  [*Id.* at 9]. Again, though, the Court must focus its analysis on the allegations in the Complaint.  Ms. McCraken alleges that (1) she was booked into custody at approximately 10:00 p.m., [Doc. 1 at ¶ 44]; (2) she could have "easily arranged to pay her bond and acquired safe transportation home if the ECSO deputies allowed her to make a phone call after she was initially booked into custody, around 10:00 PM," [*id.* at ¶ 44]; but (3) she was not able to use the telephone until approximately 2:00 a.m., and although she attempted to contact

---

[7] Defendant also argues that the ESCO "deputies did reasonably modify their telephone call procedure when they assisted Plaintiff," asserting a number of factual allegations that are not contained in the Complaint. [Doc. 17 at 8–9]. It is well established that the Court's consideration of a Rule 12(b)(6) motion to dismiss is limited to the allegations contained in the operative pleading, absent limited exceptions not invoked by Defendant here. *Brown v. City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025).  The Court does not consider any additional facts that Defendant asserts in its Motion.

10

family and friends, she was unable to reach anyone to pick her up, [*id.* at ¶¶ 47–48]. These allegations must be taken as true, and a reasonable inference may be drawn from these allegations that *had* Ms. McCraken been able to contact family or friends at 10:00 p.m. instead of 2:00 a.m., she would have been able to secure a ride home.  Dismissal is not warranted on this basis.

Defendant next argues that the ESCO's denial of a ride home does not give rise to an ADA claim.  [Doc. 17 at 9].  The crux of Defendant's argument is that "it is not the jail's duty to ensure that every person released from the jail gets home safely."  [*Id.* at 10].  Defendant contends that "[p]roviding a released inmate a ride home from the jail at two in the morning is not a service, activity, or program that the Elbert County Sheriff's Office engages in for anyone, disabled or not."  [*Id.*].[8]  Ms. McCraken responds that "Title II of the ADA is necessarily broad and includes 'all the outputs a public entity provides to the public it serves [and is] comprehensive in that respect.'"  [Doc. 22 at 10–11 (alteration in original) (quoting *Elwell v. Oklahoma ex rel. Bd. of Regents of Univ. of Okla.*, 693 F.3d 1303, 1306 (10th Cir. 2012))].  She argues that the Complaint plausibly alleges that she was denied the service of "being protected and served by ESCO, and being safe while either living, working, or visiting Elbert County, Colorado."  [*Id.* at 11 (citing [Doc. 1 at ¶ 102])].  Defendant does not respond to Plaintiff's broad framing of the service purportedly at issue in this case.  *See* [Doc. 26 at 8–9].

Title II of the ADA states that "no qualified individual with a disability shall, by

---

[8] The Court notes that Plaintiff's ADA claim argues that Defendant violated the law in numerous respects, including failing to provide Plaintiff the opportunity to make a phone call at 10:00 p.m. and failing to let her stay in the jail overnight.  *See, e.g.,* [Doc. 1 at ¶¶ 55–59, 61, 104].  Defendant does not challenge those portions of Plaintiff's ADA claim in this argument, and the Court's analysis is limited accordingly.

11

reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The statute does not define "services, programs, or activities." *See id.* § 12131. However, many courts have emphasized the breadth of the ADA's "services, programs, or activities" language, finding it "extremely broad in scope and includ[ing] anything a public entity does." *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 289 (3d Cir. 2019). And the Rehabilitation Act, which is often construed and considered in identical fashion to the ADA, defines "program or activity" as "all of the operations of . . . a department, agency, special purpose district, or other instrumentality of a . . . local government." 29 U.S.C. § 794(b)(1)(A); *cf. Cohon ex rel. Bass v. N.M. Dep't of Health*, 646 F.3d 717, 725 (10th Cir. 2011) ("[Courts] look to decisions construing the Rehabilitation Act to assist . . . in interpreting analogous provisions of the ADA."); *see also Frame v. City of Arlington*, 657 F.3d 215, 225–27 (5th Cir. 2011) (looking to and relying on the Rehabilitation Act's definition of "program or activity" to construe "services, programs, or activities" for purposes of the ADA); *Barden v. City of Sacramento*, 292 F.3d 1073, 1076–77 (9th Cir. 2002) (same); *Furgess*, 933 F.3d at 289 (same).

The interpretation of a statute begins with examining the statute's plain language. *Rocky Mountain Wild v. Dallas*, 98 F.4th 1263, 1291 (10th Cir. 2024). When a statute does not define a particular term, courts may turn to the dictionary to ascertain the term's common, ordinary meaning. *Id.* If the plain language is clear, the court's task is complete. *Id.* But if the language is ambiguous, the court may look beyond the statute to other interpretive aids, *United States v. Jefferson*, 989 F.3d 1173, 1177 (10th Cir. 2021), such as the statute's "legislative history and the underlying public policy," *Woods v. Standard*

12

*Ins. Co.*, 771 F.3d 1257, 1265 (10th Cir. 2014) (quotation omitted); *see also Hamer v. City of Trinidad*, 441 F. Supp. 3d 1155, 1167–69 (D. Colo. 2020) (this Court looking to the ADA's legislative history to determine whether a city sidewalk was a "service").

Here, it is clear that the Parties disagree not only as to whether Plaintiff was denied the benefit of a "service, program, or activity," but also as to the threshold determination of just how broadly to construe and define the alleged service, program, or activity at issue in this case. But neither Party engages with the text of the ADA or frames their argument in a manner appropriate for the pleading stage. Indeed, Defendant's argument does not address the actual allegations in Plaintiff's Complaint, the ADA's express language, or cases interpreting the ADA, relying instead on Colorado statutes, *see* [Doc. 17 at 9–10], and facts *not* alleged in the Complaint, *see* [*id.* at 10 ("Providing a released inmate a ride home from the jail at two in the morning is not a service, activity, or program that the Elbert County Sheriff's Office engages in for anyone, disabled or not.")], to argue that providing a ride home is not a "service" under the ADA. On the other hand, Plaintiff's argument advocating for a broad construction of "service" relies on sweeping arguments about the ADA generally, without any citation to analogous cases finding that the general provision of "public safety" is a "service" under the ADA. *See* [Doc. 22 at 10–11].

The Court declines to undertake a statutory interpretation analysis without affirmative arguments from the Parties. *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1257 n.1 (10th Cir. 2001). Based on the Parties' present arguments, it is clear to the Court that this issue is not amenable to resolution at the pleading stage, given the Parties' lack of development in their arguments. Instead, the issue may be more appropriately resolved (if presented by the Parties) at the summary judgment stage, with a complete

factual record and the benefit of arguments expressly addressing the language of the ADA in the context of this case specifically.

Turning to Defendant's next argument, which is again limited to the portion of Plaintiff's ADA claim based on the ESCO deputies' failure to give her a ride home, Defendant contends that providing Ms. McCraken a ride home would not have been a reasonable accommodation under the ADA because it would have fundamentally altered the services provided by the ESCO. [Doc. 17 at 11]. This argument is again supported by factual assertions *not* contained in the Complaint, *see, e.g.*, [*id.* ("Even if deputies had taken Plaintiff home, she would have been required to sit in the backseat of a police vehicle, without the ability to open her door from the inside, and would be required to wear handcuffs during transport to ensure officer safety")], and the Court does not consider those assertions in this analysis, *Brown v. City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025).

Federal regulations provide that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i). This regulation establishes an affirmative defense to liability, *Suvino v. Time Warner Cable, Inc.*, No. 16-cv-07046-LTS-BCM, 2017 WL 11569346, at *1 (S.D.N.Y. Nov. 6, 2017), and it is Defendant's burden to demonstrate that the requested accommodation would fundamentally alter the nature of its service, program, or activity, *Fisher v. Okla. Health Care Auth.*, 335 F.3d 1175, 1182 (10th Cir. 2003); *Beebe v. Colorado*, No. 18-cv-01357-CMA-KMT, 2019 WL 6255763, at

14

*5 (D. Colo. Nov. 22, 2019).  This sort of fact-specific affirmative defense is unsuited for resolution on a motion to dismiss.  *See Belancio v. Kan. Dep't of Health & Env't*, No. 17-1180-EFM, 2018 WL 2289559, at *8 (D. Kan. May 18, 2018) ("Defendants' arguments that [the requested modification] would fundamentally alter the nature of [their] program rely on facts not contained in Plaintiff's First Amended Complaint, and are improperly presented at the motion to dismiss stage."); *Kelly v. Town of Southold*, No. 21-cv-03215-JMA-LGD, 2024 WL 4825778, at *3 (E.D.N.Y. Nov. 18, 2024).  Accordingly, the Motion to Dismiss will not be granted on this basis.

Finally, Defendant argues that emotional distress damages are not recoverable under Title II of the ADA.  [Doc. 17 at 11].  This argument relies on the Supreme Court's decision in *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212 (2022), wherein the Supreme Court considered whether emotional distress damages are recoverable for claims under the Rehabilitation Act and the Patient Protection and Affordable Care Act (the "ACA"), *see id.* at 217–18.  To reach its decision, the Supreme Court examined whether emotional distress damages are generally compensable in contract actions, *id.* at 220–30, as the Rehabilitation Act and the ACA are Spending Clause statutes that operate in a manner analogous to contract actions, *id.* at 218–19.  The Supreme Court ultimately concluded that "emotional distress damages are not recoverable under . . . Spending Clause antidiscrimination statutes," including the Rehabilitation Act, because emotional distress damages are not traditionally available in contract actions.  *Id.* at 220–30.

Defendant argues that because Title II of the ADA "expressly incorporates the remedy provision in the Rehabilitation Act," then the remedies available under Title II are

15

limited to the remedies available under the Rehabilitation Act. [Doc. 17 at 13]. Plaintiff responds that *Cummings* is inapplicable because it did not interpret Title II, asserting that "its holding should be limited to the federal statutes discussed in its decision." [Doc. 22 at 8]. She further contends that *Cummings* is inapplicable here because the ADA is not a Spending Clause statute. [*Id.* at 9].

This Court has addressed this very issue in a prior decision and concluded that emotional distress damages were not available under the ADA. *See Williams v. Colo. Dep't of Corr.*, No. 21-cv-02595-NYW-NRN, 2023 WL 3585210, at *5 (D. Colo. May 22, 2023). The Court reasoned that because the ADA expressly incorporates and adopts the available remedies in the Rehabilitation Act, "[i]t necessarily follows that . . . if emotional distress damages are not available under the Rehabilitation Act, then emotional distress damages would not be available in Title II cases, either." *Id.* District courts across the country have reached this same conclusion. *See, e.g.*, *Montgomery v. Dist. of Columbia*, No. 18-cv-01928-JDB, 2022 WL 1618741, at *24 (D.D.C. May 23, 2022) ("[I]f a certain category of damages is not available under [the Rehabilitation Act], it is not available under Title II either."); *Pennington v. Flora Cmty. Unit Sch. Dist. No. 35*, No. 3:20-cv-00011-MAB, 2023 WL 348320, at *2 (S.D. Ill. Jan. 20, 2023) ("Because Title II of the ADA incorporates the remedies set forth in the [Rehabilitation Act] . . . it therefore follows that emotional distress damages are also not available in suits brought under the ADA."); *Smith v. Kalamazoo Pub. Sch.*, 703 F. Supp. 3d 822, 829 (W.D. Mich. 2023) (rejecting argument that *Cummings* did not apply to the ADA because the ADA is not a Spending Clause statute); *Rohrer v. City of Gastonia*, No. 3:23-cv-00396-RJC-SCR, 2024 WL 5694676, at *15 (W.D.N.C. Aug. 26, 2024). Plaintiff does not cite any post-*Cummings*

16

authority finding that emotional distress damages are available under the ADA. *See* [Doc. 22 at 8–9].

Because emotional distress damages are not available under the Rehabilitation Act, and because the ADA's available remedies are those set forth in the Rehabilitation Act, then Plaintiff cannot obtain emotional distress damages under the ADA. Insofar as Plaintiff requests that relief under the ADA, the Motion to Dismiss is **GRANTED**. All of Plaintiff's other requested damages remain, including the request for emotional distress damages under CADA, which is not addressed in the Motion to Dismiss. *See* [Doc. 17 at 11–15]; *Williams*, 2023 WL 3585210, at *7. In all other respects, the Motion to Dismiss is **DENIED**.

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1) Plaintiff's Motion for Leave to File First Amended Complaint [Doc. 63] is **DENIED**;

(2) The Motion for Leave to File Sur-Reply to Defendant's Motion to Dismiss [Doc. 27] is **DENIED as moot**;

(3) Defendant's Motion to Dismiss [Doc. 17] is **GRANTED in part** and **DENIED in part**;

(4) Plaintiff's ADA claim is dismissed to the limited extent that it seeks emotional distress damages; and

(5) Defendant's Amended Reply to Response to Motion to Dismiss [Doc. 35] is **STRICKEN** as improperly filed.

DATED: July 11, 2025

BY THE COURT:

_____
Nina Y. Wang
United States District Judge

18