IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-CV-02013-NYW-CYC

AMY MCCRAKEN,

    Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS, ELBERT COUNTY, COLORADO,

    Defendant.

## MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

Plaintiff Amy McCraken pursuant to Fed. R. Civ. P. 15(a)(2), respectfully moves for leave to amend her Complaint and Jury Demand (ECF No. 1) because justice so requires. Pursuant to D.C.COLO.LCivR 15.1, Plaintiff's proposed amended complaint is attached as Exhibit 1, with the amendments in redline.

### CERTIFICATE OF CONFERRAL PURSUANT TO D.C.COLO.LCivR 7.1

Undersigned counsel conferred with counsel for Defendant regarding the instant motion. Defendant opposes this motion and the relief requested herein.

### INTRODUCTION

Ms. McCraken initiated this lawsuit on July 22, 2024 against the Board of County Commissions of Elbert County, Colorado ("the Board"). Since then, the Parties have fully litigated a motion to dismiss, which this Court largely denied, convened a Rule 26(f) conference, and exchanged discovery. Despite all of this, the Board now asserts that it is

not the legally responsible defendant in this lawsuit because, as the Board argues, the Elbert County *Sheriff's Office* ("ECSO") is a separate public entity, individually and solely responsible for Ms. McCraken's claims. The Board asserts this position now despite never raising it during the Parties Rule 26(f) conference nor in their motion to dismiss, and despite serving discovery documents, videos, photographs originating from the ECSO and sworn interrogatory responses on the Board's behalf verified by an officer of the ECSO. It appears the Board will wait to formally raise this legal defense via a Fed. R. Civ. P. 56 motion, potentially after discovery has been completed. Ms. McCraken and her counsel first learned of the Board's position at the discovery dispute conference on August 25, 2025, convened after the Board's designated Rule 30(b)(6) deponent could not answer questions about the allegations at the heart of this dispute.

Justice requires allowing Ms. McCraken to amend her complaint to add the ECSO as a party to this litigation to answer—through discovery—several legal questions. Is the ECSO a separate public entity? If so, is the ECSO solely liable to Ms. McCraken's claims should she succeed? The answers to these questions are not currently ascertainable, whether by law or fact, and understanding the answer has been made even more opaque by the Board's positions, actions, and arguments in discovery thus far, in which the two entities seamlessly cooperated in this lawsuit up until the Rule 30(b)(6) deposition. If Ms. McCraken is not allowed to amend her complaint, the Board or the ECSO may escape accountability by leveraging the unclear legal relationship between them. The pursuit of the justice and resolution of this case on its merits compels against such a result.

## **BACKGROUND**

The following timeline highlights the unclear representations of the Board in this matter regarding its relationship with the ECSO.

1. On July 13, 2023, before this lawsuit began, Ms. McCraken sent a demand letter to Elbert County, one copy to the ECSO and one copy to the County Attorney. In the letter, Ms. McCraken summarized her contact with ECSO deputies on August 2, 2022, and outlined her potential claims for relief. Ms. McCraken did not receive a response to her demand letter from Elbert County.

2. Ms. McCraken filed her operative complaint on July 22, 2024, alleging the Defendant, Elbert County,[1] violated her rights under Title II of the Americans with Disabilities Act ("ADA") and the Colorado Anti-Discrimination Act ("CADA"). Ms. McCraken's claims arise out of allegations that deputies of the county's law enforcement service, the Elbert County Sherriff's Office ("ECSO"), refused to give her a ride home upon her release from the Elbert County jail in the middle of the night in an extremely remote, rural area of Colorado, knowing that she walks with a prosthetic leg. ECF No. 1.

3. On September 3, 2024, the Parties held a Fed. R. Civ. P. 26(f) conference. ECF No. 13 at 4. The Board's counsel, The Lane Law Firm, P.C., did not indicate that Ms. McCraken had sued the wrong entity or that the Board would not be legally responsible should her claims succeed. In contrast, the Board indicated in the Proposed Scheduling Order only that it disputes Ms. McCraken's factual allegations. *Id*. at 2.

---

[1] Because she sued a Colorado county, Ms. McCraken was required by statute to name the Elbert County's Board of County Commissioners as the operative defendant. § 30-11-105, C.R.S.

3

4. The Court held a scheduling conference in this matter on September 23, 2024. ECF No. 14. During the conference, the Court encouraged the Parties to attend a mediation to resolve the matter through settlement. *Id*. The Board's counsel again did not indicate during the scheduling conference that Ms. McCraken has sued the wrong entity or that the Board would not be legally responsible should her claims succeed. Rather, the Board declined to engage in settlement discussions only because it thought it was too early to mediate the dispute and it wanted to proceed with its motion to dismiss.

5. Meanwhile, on September 25, 2024, the Elbert County Sheriff, Timothy Norton ("Sheriff Norton"), and the ECSO sued the Board, seeking a declaratory judgment that the ECSO is a public entity *separate from* the Board, and that the Board and the Elbert County Manager wrongfully exceeded their authority by interfering with certain ECSO operations.[2] *See generally* Exhibit 2.

6. On October 7, 2024, the Board moved to dismiss Ms. McCraken's lawsuit. ECF No. 17. In its motion, the Board wrote that "[it] adhered to Title II of the ADA . . . at all times while Plaintiff was in their custody at the Elbert County Jail." *Id*. at 5. The Board continued, arguing that Ms. McCraken's lawsuit should be dismissed because the ECSO deputies adhered to the provisions of the ADA, because the scope of the ECSO's services did not include providing Ms. McCraken a ride home, and because providing Ms. McCraken a ride home would fundamentally alter the services of the ECSO. *Id.* at 5-11. Importantly, the Board did not argue that the ECSO is a separate legal entity, that the

---

[2] Ms. McCraken and her counsel discovered this litigation on their own in July, 2025. At no point did the Board mention the ongoing legal dispute between the Board or the ECSO, nor indicate that the legal relationship between them has been the subject of litigation.

4

Board is not legally responsible for actions of ECSO deputies, or that the Ms. McCraken named the wrong defendant in this lawsuit. *See generally id*.

7. On October 31, 2024, the Board provided its initial disclosure to Ms. McCraken pursuant to Fed. R. Civ. P. 26. Exhibit 3. The Board included in its disclosure, security camera footage from the ECSO jail and documents from the ECSO documenting ECSO deputies' contact with Ms. McCraken in August 2022. *Id*. The Board disclosed several witnesses, including eight ECSO deputies and employees, and indicated that each ECSO deputy or employee was "in the care of" The Lane Law Firm, P.C.—the same counsel representing the Board in this matter. *Id*.

8. On November 26, 2024, Ms. McCraken served the Board with her first request for written discovery. The request asked for production of documents and sworn responses to interrogatories and requests for admission regarding Ms. McCraken's contact with the ECSO on August 2, 2022.

9. On January 8, 2025, the Board denied Ms. McCraken's Request for Admission No. 1, which asked the Board to admit that it was apparent to all persons involved in Ms. McCraken's arrest, jailing, and release that she walked with the assistance of a prosthetic leg. Exhibit 4. The Board <u>did not</u> deny that it had authority or knowledge to respond to the request; it outright denied the request—speaking on behalf of the ECSO deputies involved. *Id*.

10. On January 15, 2025, the Board responded to Ms. McCraken's first request for written discovery. Exhibit 5. In its responses, the Board answered questions about Ms. McCraken's contact with the ECSO on August 2, 2022, and ECSO policies regarding

5

compliance with the ADA. *Id*. Crucially, the person who verified the interrogatory responses on behalf of the Board was Chad Church, a lieutenant with the ECSO. *Id*.

11. On March 12, 2025, the Board served supplemental Rule 26 disclosures. Exhibit 6. In those disclosures, the Board included additional security camera footage and photographs from the ECSO. *Id*.

12. Ms. McCraken served a second discovery request on the Board on March 14, 2025, requesting additional policies of the ECSO. In response, the Board produced the ECSO policy manual and the ECSO custody manual on April 21, 2025. Exhibit 7.

13. On May 15, 2025, the Board served supplemental responses to Ms. McCraken's first discovery request. Exhibit 8. Lieutenant Church again verified the sworn interrogatory responses on behalf of the Board. *Id*.

14. On May 30, 2025, after conferral with the Board's counsel, Ms. McCraken served an amended notice of deposition of the Board pursuant to Fed. R. Civ. P. 30(b)(6), outlining several topics regarding Ms. McCraken's contact with the ECSO on August 2, 2022, and policies and procedures of the ECSO. Exhibit 9. At no point during the Parties' conferral did the Board's counsel indicate that the Board could not designate a knowledgeable witness to testify on its behalf regarding the proposed topics.

15. The Board designated Byron McDaniel, Chairman of the Board, as its sole witness. During the deposition on July 17, 2025, Mr. McDaniel did not know the answers to most of Ms. McCraken's questions regarding policies, procedures, and actions of the ECSO or Ms. McCraken's contact with the ECSO in August 2022, despite the specificity of the topics outlined in the deposition notice.

6

16. Meanwhile, shortly after Ms. McCraken's attempted Rule 30(b)(6) deposition, on August 5, 2025, the presiding court entered declaratory judgment in the lawsuit that Sheriff Norton and the ECSO filed against the Board and County Manager. Exhibit 10. The order describes an agreement Sheriff Norton, the ECSO, the Board, and the County manager reached regarding the level of authority the Board has over the Sheriff and the ECSO. *Id*. The terms of that agreement included:

- The ECSO is a constitutional and statutory entity that consists of the Sheriff.

- The Sheriff possesses authority to sue and be sued.

- The Sheriff possess authority to establish policies regarding any aspect of ECSO operations, subject only to statutory limits, the Board's budgetary appropriations, and the County's finance policy.

- The Sheriff, not the county or the board of county commissioners, possesses authority over the policies and operations of the Elbert County Detention Facility.

- The Sheriff possesses authority to establish policies regarding any aspect of ECSO operations, subject only to statutory limits, BOCC budgetary appropriations, and the County's finance policy.

- If the ECSO lacks either a policy on a particular aspect of labor, wage, or employment law or a practice in relation to human resources functions, the Board's policy addressing that particular aspect of the law shall govern until the ECSO enacts a policy which meets or exceeds the requirements of the county's policy or practice.

*Id*.

17. The Parties attended a discovery dispute conference regarding the adequacy and preparedness of the Board's Rule 30(b)(6) witness on August 25, 2025. ECF No. 88. There, upon questioning by the Court, the Board stated for the first time, through its counsel, that the ECSO—not the Board—is the correct defendant in this matter

7

and was "the proper party from day one." Exhibit 11 at 33:21-23, 34:18. When asked when the Board was planning on bringing that position before the Court, the Board's counsel indicated that it would do so via a Rule 56 motion. *Id*. at 36:16-17.

18. During the discovery dispute conference, the Board's counsel nonetheless made representations on the record that still obscure the legal relationship between the Board and the ECSO including:

- The Board's counsel would have made sure that the Sheriff was produced for a deposition if Ms. McCraken requested a deposition of the Sheriff. *Id*. at 5:1-3.

- The ECSO and the Board have been cooperating on responding to Ms. McCraken's discovery requests during this litigation. *Id*. at 9:11-12.

- If Ms. McCraken wanted someone to testify about the topics in the Rule 30(b)(6) from the Sheriff's office, it would have been a "non-issue," and the Board's counsel would have produced a witness to testify on those topics. *Id*. at 11:3-6.

- If Ms. McCraken provided written deposition questions about the ECSO to the Board, the Board would do their best efforts to designate someone with knowledge to answer them and bind those answer on the Board. *Id*. at 30:2-31:11.

Based on the above, the relationship between the Board and the ECSO appears far from settled, leaving Ms. McCraken vulnerable to a disputed and evolving relationship between these two arms of Elbert County. She moves to amend her complaint to answer this unsettled legal question and hold the appropriate legal entity responsible.

## **LEGAL STANDARDS**

A Court should freely grant a party leave to amend their Complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). The purpose of Rule 15's liberal standard for

amendment of pleadings is "to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Hardin v. Manitowoc–Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982). As such, "in the absence of . . . undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment . . . the leave sought should, as the rules require, be freely given." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The party opposing an amendment to the pleadings bears the burden of proving that the amendment should be refused on one of these bases. *Openwater Safety IV, LLC v. Great Lakes Ins. SE*, 435 F. Supp. 3d 1142, 1151 (D. Colo. 2020).

When a party moves for leave to amend a pleading after the deadline in the operative scheduling order has passed, the party mush also show good cause for modification of the scheduling order pursuant to Fed. R. Civ. P. 16(b). Under that rule, modification is allowed upon a showing of good cause. Good cause to modify a scheduling order exists when the movant demonstrates diligent efforts to meet the scheduling deadline and an adequate explanation for any delay. *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 988 (10th Cir. 2019).

## **ARGUMENT**

I. **Good cause exists to modify the scheduling order pursuant to Fed. R. Civ. P. 16(b), and Ms. McCraken did not unduly delay seeking leave to amend her complaint pursuant to Fed. R. Civ. P. 15(a).**

For the reasons outlined below, good cause pursuant to Fed. R. Civ. P. 16(b) exists to modify the operative scheduling order in this matter and allow Ms. McCraken to amend

9

her complaint. For the same reasons, Ms. McCraken did not unduly delay seeking to amend her complaint pursuant to Fed. R. Civ. P. 15(a). *Bylin v. Billings*, 568 F.3d 1224, 1231 (10th Cir. 2009) (explaining the "rough similarity" between the "undue delay" standard for Rule 15 and the "good cause" standard of Rule 16).

Ms. McCraken did not know and could not have known of the Board's position that the ECSO is separately and solely responsible for ECSO deputies' violations of Title II of the ADA or CADA until the August 25, 2025, discovery dispute conference. That is the case for three reasons: (A) Sheriff Norton, the ECSO, the Board, and the County Manager did not reach a stipulated declaratory judgment regarding what authority, or lack thereof, the Board has over certain ECSO operations until August 5, 2025, (B) the law does not say that the ECSO is separately and solely responsible to Ms. McCraken's claims, and (C) the Board did not take the position that the ECSO is separately and solely responsible to Ms. McCraken's claims until August 25, 2025. Each reason is explained below.

**A. Sheriff Norton, the ECSO and the Board did not reach a stipulated declaratory judgment regarding what authority, or lack thereof, the Board has over certain ECSO operations until August 5, 2025.**

At the time Ms. McCraken filed her complaint, on July 22, 2024, the ECSO and the Board apparently disagreed on what authority the Board has over certain ECSO actions and operations. Exhibit 2 at ¶¶ 10-23. That disagreement evolved into a lawsuit, filed on September 25, 2024, in which Sheriff Norton and the ECSO sued the Board and the Elbert County Manager alleging the ECSO is a distinct and separate public entity, and that the Board and the Elbert County manager wrongfully exceeded their authority by interfering with certain operations of the ECSO. *See generally* Exhibit 2. The parties to that lawsuit

did not resolve their dispute until the presiding court entered a stipulated declaratory judgment on August 5, 2025. Exhibit 10. Although the declaratory judgment clarified *some* demarcations between the ESCO and the Board, the declaratory judgment still does not squarely speak to whether the Board or the ECSO is the legally responsible "public entity" for violations of Title II of the ADA and CADA by ECSO deputies. *See*, *id.*

The above demonstrates that the ECSO and the Board did not agree nor formalize any of these disputed legal demarcations between them until August 7, 2025, when the court issued a stipulated declaratory judgment in that matter. If those entities themselves did not understand the legal demarcations between them until then, then Ms. McCraken could not have. Furthermore, because the declaratory judgment does not squarely address which entity is legally responsible to Ms. McCraken's claims here, the answer to that question remains unknown. As such, Ms. McCraken should be allowed to amend her complaint to add the ECSO as a party, resolve the ambiguities between it and the Board through discovery, and hold the correct legal entity responsible.

> **B. The law does not say that the ECSO is separately and solely responsible to Ms. McCraken's claims such that Ms. McCraken could have known to name the ECSO in her original complaint.**

The available legal authority does not clearly answer whether the ECSO or the Board is legally responsible for violations of Title II of the ADA and CADA committed by ECSO deputies. *E.g.*, *Coates v. Adams Cnty. Sheriff's Office*, 631 F. Supp. 3d 976, 997–98 (D. Colo. 2022) (recognizing split in this district regarding whether a county or its sheriff's office are proper municipal defendants for certain civil actions); Exhibit 11 at 17:8-21 (Judge Chung explaining on the record that the question is a "live issue" with legal

11

authority going both directions). Furthermore, the cases that have reached that issue one way or the other have not involved a government services disability discrimination case pursuant to Title II of the ADA or CADA. *See*, *id*. As such, both at the time Ms. McCraken filed her complaint and continuing until present, the law has not delineated clearly which entity may ultimately be responsible to her claims such that she could have known to name the ECSO in her original complaint.

### C. The Board did not take the position that the ECSO is separately and solely responsible to Ms. McCraken's claims until the August 25, 2025 discovery dispute conference.

The Board did not take the position that the ECSO is separately and solely responsible to Ms. McCraken's claims until the Parties litigated a dispute about the appropriate witness for Ms. McCraken's Rule 30(b)(6) deposition. *See generally* Exhibit 11. Until then, the Board seamlessly produced ECSO documents, photographs, and videos in discovery and provided sworn interrogatory responses on its behalf verified by an officer of the ECSO. Exhibits 3-8. Furthermore, when the Board moved to dismiss Ms. McCraken's lawsuit in its entirety on October 7, 2024, it did not argue or even mention that the ECSO is separately and solely responsible to Ms. McCraken's claims. *See* ECF No. 17. In contrast, the Board wrote in its motion that the Board adhered to the ADA while Ms. McCraken was in its custody while detained at the Elbert County Jail. *Id*. at 5. It was not until Judge Chung directly asked the Board's counsel at the August 25, 2025, discovery dispute conference that Ms. McCraken learned of the Board's position that the ESCO is the legally responsible entity in this lawsuit—and of its intent to wait until Rule 56 briefing to raise the issue. Exhibit 11 at 33:21-23, 34:18.

Based on the above, Ms. McCraken did not know and could not have known of the Board's position that the ECSO is the legally responsible entity in this lawsuit until August 25, 2025. She moves now to amend her complaint and add the ECSO as a party to this lawsuit so that she may clarify through discovery the legal relationship between the two entities and properly assert her rights against the entity responsible.

## II.     Neither the Board nor the ECSO will suffer undue prejudice should Ms. McCraken amend her complaint and add the ECSO as a party.

The "most important factor" in deciding a motion to amend is "whether the amendment would prejudice the nonmoving party." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1207 (10th Cir. 2006). Generally, a defendant is not unduly prejudiced by an amendment to the pleadings when it arises out of the same subject matter set forth in the original complaint, and does not raise significant new factual issues. *Id.* at 1208.

Here, Ms. McCraken's proposed First Amendment Complaint does not prejudice either the Board or the ECSO for several reasons. First, the proposed amendment does not add any new claims, nor does it present any new facts such that it prejudices the Board. Rather, the amended complaint asserts claims arising out of the same incident that has been the subject of this litigation from its inception: Ms. McCraken's contact with ECSO deputies in August 2022. The proposed amendment adds the ECSO as a named defendant based only on the Board's newly asserted position that the ECSO is a separate public entity that is solely responsible for Ms. McCraken's claims.

Second, the proposed amendment does not unduly prejudice the ECSO. The ECSO has known about Ms. McCraken's potential lawsuit since at least July 2023, before she initiated this lawsuit, because she sent a copy of her demand letter to both the Elbert

County attorney and the ECSO. Furthermore, the ECSO has already been participating in discovery in this matter. Officers of the ECSO have been disclosed in discovery as witnesses who are "in the care of" The Lane Law Firm, P.C.—the same counsel that represents the Board. The ECSO has submitted documents, photographs, and videos in the Board's disclosures and discovery responses. An officer of the ECSO, Chad Church, has signed written interrogatory responses on behalf of the Board. Finally, at the discovery dispute hearing on August 25, 2025, the Board's counsel represented that if Ms. McCraken wanted to depose the Sheriff, then the Board's counsel "would do what [she] needed to do to make sure that he was produced" in this litigation, demonstrating apparently, that the ECSO will be represented by the Board's counsel, consistent with their witness disclosures in this matter. Exhibit 11 at 9:12, 9:17-20; Exhibit 3.

In sum, both the Board and the ECSO have been on notice of their potential responsibility to Ms. McCraken's claims, have cooperated jointly in discovery thus far, and only recently has the Board taken the position that the ECSO is separately and solely responsible to Ms. McCraken's claims, prompting the need for the instant amendment.

### III.    Ms. McCraken's claims against the ECSO relate back to her original complaint such that the proposed amendment is not futile.

Ms. McCraken's proposed amended complaint relates back to her original complaint pursuant to Fed. R. Civ. P. 15(c), and as such, the proposed amendment is not futile. To satisfy the requirements of that rule, the party added via the amendment must have, within the Rule 4(m) period, "received such notice of the action that it will not be prejudice in defending on the merits" and "knew or should have known that the action

14

would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(i)-(ii).

The elements of the rule are satisfied here. First, the ECSO actually knew about Ms. McCraken's potential claims against it as early as July 2023, a year before she initiated this lawsuit, because she sent a copy of her demand letter to the ECSO. As such, the ECSO had notice of the action during the Rule 4(m) period. Second, the ECSO cannot claim it will be prejudiced by being added to this action at this juncture because it has already been cooperating with the Board while participating in discovery, and has verified interrogatory responses in discovery on behalf of the Board. Third, the ECSO knew or should have known that Ms. McCraken's lawsuit could have been brought against it but for a mistake because Ms. McCraken's complaint concerns conduct of ECSO deputies, and within a few months of Ms. McCraken's complaint, Sheriff Norton and the ECSO filed a lawsuit asserting, among other positions, that it was a separate entity from the larger Elbert County government. Exhibit 2. As such, Ms. McCraken's proposed amendment is not futile because it relates back to her originally filed complaint.

## **CONCLUSION**

Justice requires allowing Ms. McCraken to amend her complaint and add the ECSO as a party to determine whether the ECSO is a public entity separate from the Board, as the Board claims, and if so, if the ECSO is solely responsible for Ms. McCraken's claims. For these reasons, Ms. McCraken respectfully requests this Court **GRANT** her leave to file her First Amended Complaint, attached hereto as Exhibit 1.

DATED this 23rd day of September, 2025.

15

Respectfully submitted,

*s/ Aaron Slade*
Aaron Slade, Esq.
NOVO LEGAL GROUP, LLC
4280 Morrison Rd.
Denver, CO 80219
T: 303-335-0250
F: 303-296-4586
E: aslade@novo-legal.com

*Attorney for Plaintiff*

16

**CERTIFICATE OF SERVICE**

      I hereby certify that on September 23, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send electronic notification to the following recipients:

Sean James Lane
slane@lanelawpc.com

Brittney Townsley
btownsley@lanelawpc.com

William O'Donnell, Esq.
wodonnell@lanelawpc.com

Alex M. Pass, Esq.
apass@lanelawpc.com

*Attorneys for Defendant*

                                            *s/ Aaron Slade*
                                            Aaron Slade, Esq.
                                            Novo Legal Group, LLC