| | |
|---|---|
| DISTRICT COURT, ELBERT COUNTY, COLORADO<br>751 Ute Avenue, P.O. Box 232<br>Kiowa, CO 80117 | DATE FILED<br>August 5, 2025 10:44 AM<br>CASE NUMBER: 2024CV30091 |
| **Plaintiffs:** ELBERT COUNTY SHERIFF'S OFFICE; and TIMOTHY NORTON, in his official capacity as Sheriff of Elbert County,<br><br>v.<br><br>**Defendants:** BOARD OF COUNTY COMMISSIONERS OF ELBERT COUNTY, COLORADO; and SHAWN FLETCHER, in his official capacity as County Manager. | ▲**COURT USE ONLY**▲<br><br>Case No.: 2024CV30091<br><br>Division: 1 |
| **ORDER GRANTING THE PARTIES' FIRST AMENDED JOINT MOTION FOR STIPULATED DECLARATORY JUDGMENT** | |

Before the Court is the Parties' First Amended Joint Motion for Stipulated Declaratory Judgment. Having reviewed the Joint Motion, for good cause shown, being fully advised of the premises for the Joint Motion, and in light of the parties' stipulation to the terms set forth below in this Stipulated Declaratory Judgment, the Court now adopts the following as an Order of this Court:

**I.   DEFINITIONS**

"BOCC" means the County's Board of County Commissioners, however constituted.

"County" means Elbert County, Colorado.

"ECSO" means the County's Sheriff's Office, over which Timothy Norton presently is the duly elected statutory official as of the entry of this SDJ.

"Employee" means non-exempt employee, supervisor, and non-elected department head.

"Party" means the Sheriff, acting for himself and on behalf of the ECSO and all ECSO employees, and BOCC, acting for itself and on behalf of the County and all non-ECSO County employees, individually.

"Parties" means BOCC and the Sheriff collectively.

"POST-Certified" means law enforcement personnel who meet all the standards imposed by law on a peace officer, and are certified by the peace officers' standards and training board, pursuant to C.R.S. §§ 16-2.5-101, *et seq.*

"SDJ" means the within Stipulated Declaratory Judgment.

"Sheriff" means Timothy Norton, in his official capacity as elected Sheriff of the County.

## II.   RECITALS

A.   On September 25, 2024, the Sheriff and ECSO filed a Complaint in the above-captioned case, Elbert County District Court Case No. 2024CV30091 ("Lawsuit"), in which they asserted claims against BOCC and County Manager Shawn Fletcher contending conflict existed between the Sheriff's statutory authority over ECSO and the County's asserted authority in relation to certain County policies which interface with the Sheriff and ECSO, and seeking declaratory relief but not any compensatory or punitive damages. injunctive relief, or attorney fees or costs.

B.   On April 25, 2025, after extensive arms-length negotiations, the Parties submitted the original SDJ as a case resolution proposal to the Court.

C.   On July 7, 2025, after additional arms-length negotiations, the Parties submitted this updated SDJ and their First Amended Joint Motion as a case resolution proposal to the Court following a June 12, 2025 hearing with the Court.

2

D.       WHEREAS the Parties have attained agreement on the following principles of law:

1.       Presently, Elbert County is a statutory county generally established pursuant to Colo. Const. Art. XIV, § 1, and C.R.S. §§ 30-11-101 to -132, and is not a Home Rule County specifically established pursuant to Colo. Const. Art. XIV, § 16, C.R.S. §§ 30-11-501 *et seq.*, and C.R.S. §§ 30-35-102, -103.

2.       BOCC is a constitutional and statutory entity consisting of a Board of County Commissioners who are constitutional officials elected by the people of the County. *See* Colo. Const. Art. XIV, § 6; C.R.S. §§ 30-10-301 to -322; *see also* C.R.S. § 1-4-205.

3.       All property, whether real or personal, at issue here is owned by the County. *See* C.R.S. § 30-11-102.

4.       "The [BOCC] . . . has power at any meeting: to make such orders concerning the property belonging to the county as it deems expedient." C.R.S. § 30-11-107(1)(a).

5.       The BOCC further has the power to "represent the county and have the care of the county property . . . in all cases where no other provisions are made by law." C.R.S. § 30-11-107(1)(e).

6.       The County "shall adopt an annual budget." C.R.S. § 29-1-103(1); *see* C.R.S. §§ 29-1-101 *et seq.*

7.       "[T]he [BOCC] has exclusive power to adopt the annual budget for the operation of the county government, including all offices . . . [and] other spending agencies of the county government . . . which are funded in whole or in part by county appropriations." C.R.S. § 30-11-107(2); *see also* C.R.S. §§ 30-25-101 to 30-26-513.

8. BOCC possesses authority to sue and be sued. *See* C.R.S. § 30-11-105.

9. The BOCC further "has power at any meeting [t]o establish policies and procedures regarding entering into contracts binding on the county, and to delegate its power to enter into such contracts pursuant to such policies and procedures, where amounts specified in such policies and procedures and where such contracts otherwise comply with limits and requirements set forth in such policies and procedures." C.R.S. § 30-11-107(1)(aa).

10. The ECSO is a constitutional and statutory entity consisting of the Sheriff who is a constitutional official elected by the people of the County. Colo. Const. art. XIV, §§ 8 – 8.5; *see also* C.R.S. § 1-4-206.

11. The Sheriff is a public official whose office is established by the constitution, whose express powers and duties are enumerated in statute, and who is elected by the people of the County. Colo. Const. art. XIV, §§ 8, 8.5; C.R.S. §§ 30-10-101 *et seq.*, 30-10-501 *et seq.*; C.R.S. § 17-26-102; *see also Douglass v. Kelton*, 610 P.2d 1067, 1068 (Colo. 1980) ("The position of sheriff was created by Colo. Const. Art. XIV, Sec. 8"); *Tunget v. Bd. of Cnty. Comm'rs*, 992 P.2d 650, 651-52 (Colo. App. 1999) (office of sheriff is public entity with its own powers and responsibilities created by Colo. Const. arts. 8 and 8.5 and various statutory provisions).

12. The Sheriff "retains implied powers reasonably necessary to execute express powers," depending on whether the Sheriff "can fully perform his functions without the implied power." *Nash v. Mikesell*, 557 P.3d 369, 376-77 (Colo. App. 2024) (citing *People v. Buckallew*, 848 P.2d 904, 909 (Colo. 1993) (internal citation amended) (*Nash*'s citation of *Buckallew* at 908 is incorrect and was therefore amended here to 909)).

13. Except for the requirements of notice and opportunity to be heard as to revocation of appointments, and the requirement actually to adopt policies, there is no limitation on the Sheriff's discretion as to what personnel policies that he adopts. *See Tonjes v. Park Cnty. Sheriff's Office*, 300 F. Supp. 3d 1308, 1319 (D. Colo. 2018) ("The statute does not limit sheriffs' discretion in determining what policies to adopt."); *see also Cummings v. Arapahoe Cnty. Sheriff's Dep't*, 440 P.3d 1179, 1186 (Colo. App. 2018) (sheriff may even adopt policies that are contractual in nature and confer binding employment rights on the employee); *Seeley v. Bd. of Cnty. Comm'rs*, 654 F. Supp. 1309, 1313 (D. Colo. 1987) ("The Sheriff must retain a certain amount of policy-making autonomy to ensure his deputies conduct themselves in a professional manner when on duty.").

14. The Sheriff possesses authority to sue and be sued. *E.g.*, *Tihonovich v. Williams*, 582 P.2d 1051 (Colo. 1978) (plaintiff); *Dodge v. Padilla*, 2023 COA 67 (defendant).

15. The Sheriff, not the county or the board of county commissioners, possesses authority over the policies and operations of the Elbert County Detention Facility. C.R.S. §§ 17-26-102 *et seq.*; *see also* C.R.S. §§ 30-10-511, 30-10-529; *Richart v. Bd. of Comm'rs*, 33 P.2d 971, 972-73 (Colo. 1934) ("The general powers conferred upon the board with reference to the county's property generally, when in conflict with the special, particular powers conferred upon the sheriff with reference to jails, must yield to the latter; the latter must be treated as exceptions to the former.").

16. The Sheriff possesses statutory authority to hire, discipline, and terminate deputies. C.R.S. § 30-10-506[1]; *see also Tunget*, 992 P.2d at 652; *Bristol v. Bd. of Cnty.*

---

[1] Each sheriff may appoint as many deputies as the sheriff may think proper and may revoke such appointments at will; except that a sheriff shall adopt personnel policies, including policies

5

*Comm'rs*, 312 F.3d 1213 (10th Cir. 2002) ("'the sheriff, not the county or the board of county commissioners, has the right of control with respect to deputies'" (quoting *Tunget*, 992 P.2d at 652)).

17. The Sheriff possesses statutory authority to enter into contracts subject to statutory limits, BOCC budgetary appropriation, and County policy, including the County's finance policy. *E.g.*, C.R.S. §§ 29-1-101 *et seq.*, 30-25-101 to 30-26-513.

18. The Sheriff possesses authority to establish policies regarding any aspect of ECSO operations, subject only to statutory limits, BOCC budgetary appropriations, and the County's finance policy. *See Buckallew*, 848 P.2d at 909; C.R.S. §§ 29-1-101 *et seq.*, 30-10-101 *et seq.*, 30-10-501 *et seq.*

### III. JUDGMENT/AGREEMENT

#### A. Administrative Closure Subject to Section III.B.9 and Future Acts or Omissions.

The Parties mutually agree that, regarding any dispute among them which may involve an alleged breach of this SDJ, the Parties shall be bound by, and shall proceed pursuant to, the dispute resolution enforcement proceedings contemplated by Section III.B.9 of this SDJ.

As such, the Parties ask the Court to, and the Court does upon entry of this SDJ, direct the Clerk of Court to effect administrative closure of the Lawsuit, not subject to reopening except for enforcement proceedings pursuant to Section III.B.9 of this SDJ.

---

for the review of revocation of appointments. Before revoking an appointment of a deputy, the sheriff shall notify the deputy of the reason for the proposed revocation and shall give the deputy an opportunity to be heard by the sheriff. Persons may also be deputized by the sheriff or undersheriff in writing to do particular acts. C.R.S. § 30-10-506.

Nothing in this Section III.A is intended as a waiver of, or shall prevent any Party from filing for, relief in relation to the future conduct of another Party.

B.  **Rights, Duties, and Authority of the Parties**

   1.  Collective Bargaining Agreement

   The Sheriff's, County's, and the BOCC's rights, duties, and authority, if any, regarding POST-Certified ECSO personnel with ranks of Corporal and below are governed by the Collective Bargaining Agreement (hereinafter "the CBA") among the Fraternal Order of Police Lodge #69, ECSO, and the County, which will hereafter be in effect.  Should any clause of the CBA related to management rights conflict with this Stipulated Declaratory Judgment, then this Stipulated Declaratory Judgment shall control.

   2.  ECSO Personnel and Policies

   The Sheriff shall have final decision-making authority in relation to personnel policies of the ECSO, including but not limited to, hiring, supervising, disciplining, testing of any kind, and termination of employment for personnel of the ECSO.  Neither the County, any department of the County, nor the BOCC shall adopt and/or enforce a policy that would interfere with the Sheriff's authority as described herein.

   3.  Other Personnel-Related Commitments of the Sheriff

   a.  If the ECSO lacks either a policy on a particular aspect of labor, wage, or employment law (whether state or federal) or a practice in relation to human resources functions, the BOCC policy addressing that particular aspect of labor, wage, or employment law or BOCC practice addressing that particular aspect of County human resources functions shall govern until such time as the ECSO enacts a policy or practice which either meets or exceeds the

7

requirements of the County's policy or practice so long as such policy does not interfere with or violate any rights of the Sheriff as set forth herein or by statute.

     **b.**  The Sheriff and the ECSO are subject to, and shall follow, federal and state labor, wage, EEO, workplace safety, anti-discrimination, and anti-retaliation laws.

     **c.**  If the Sheriff has not done so or no policy currently exists, then the Sheriff agrees that an ECSO supervisor designated by the Sheriff shall approve the timecards of all non-exempt ECSO employees before they are processed for payment, and that the Sheriff or an ECSO supervisor designated by the Sheriff shall approve the requests for paid time off (whether sick leave or other than sick leave) of all subordinate ECSO employees.

     **d.**  The Sheriff for himself and on behalf of the ECSO, and BOCC for itself and on behalf of the County, mutually agree to engage a third-party vendor (on whom the Sheriff and BOCC both agree and who will be paid at BOCC's sole expense) to perform an audit of all ECSO written policies relating to law enforcement operations and employment but regardless of topic, and to make written non-final recommendations to the Sheriff with copy to BOCC in relation to how the policies of the Sheriff and ECSO could be improved. The vendor's written non-final recommendations shall constitute a predecisional, deliberative, inter-agency memorandum. *See* C.R.S. 24-72-204(3)(a)(XIII); *City of Colo. Springs v. White*, 967 P.2d 1042 (Colo. 1998); *Cook v Rockwell Int'l Corp.*, 935 F. Supp. 1452, 1472 (D. Colo. 1996); *Land Owners United, LLC v. Waters*, 293 P.3d 86, 95 (Colo. App. 2011). The third-party vendor's written non-final recommendations shall not constitute a public record under the Colorado Open Records Act or the Colorado Criminal Justice Records Act. The Sheriff shall have final decision-making authority regarding whether to adopt any portion of the written non-final recommendation of the third-party vendor.

   **e.** The Sheriff and ECSO shall be responsible for all human resources functions, payroll functions, and non-IT administrative functions of the ECSO.

  **4.** <u>Employment-Related, Non-Internal-Affairs, Non-Criminal Workplace Investigations</u>

   **a.** If, after entry of this SDJ, BOCC or non-ECSO County personnel discover a POST-Certified ECSO employee with rank of Corporal and below, has engaged in conduct which could be a potential violation of federal labor, EEO, anti-discrimination, or anti-retaliation laws, or state labor, EEO, anti-discrimination, or anti-retaliation laws, the Sheriff and BOCC will follow the procedures in the CBA among Fraternal Order of Police Lodge #69, ECSO, and the County, which is now or may hereafter be in effect.

   **b.** If, after entry of this SDJ, BOCC or County personnel discover a supervisory POST-Certified ECSO employee, or a non-POST-Certified civilian ECSO employee, has engaged in conduct which could be a violation of federal labor, EEO, anti-discrimination, or anti-retaliation laws, or state labor, EEO, anti-discrimination, or anti-retaliation laws, BOCC will notify the Sheriff.

   **c.** Upon notification to the Sheriff from the BOCC of such discovery, ECSO command staff (rank of Captain and above) will investigate the potential violation of the aforesaid provisions of law by said ECSO employee, unless a member of ECSO command staff is the subject of the investigation, in which case the Sheriff shall promptly engage an independent third-party investigator to conduct the investigation. The Sheriff shall have final decision-making authority regarding the identity of the independent third-party investigator.

   **d.** The member or members of ECSO command staff, or independent third-party investigator (as the case may be), who conduct an investigation contemplated by

Paragraph III.B.4.c of this SDJ, shall keep the Chairperson of the BOCC informed of the progress of the investigation. After receiving such information, if the Chairperson of the BOCC, in his sole discretion, concludes that the issue rises to the level of requiring advice of legal counsel and/or notifying the other Commissioners, then such information shall be discussed in compliance with all applicable statutes including, but not limited to, C.R.S. § 24-6-402.

    **e.** So long as the subject of the investigation is not the Sheriff, then the member or members of ECSO command staff, or the independent third-party investigator (as the case may be), who conduct an investigation contemplated by Paragraph III.B.4.c of this SDJ, after completion of the investigation and any final report generated as part of the investigation, shall present their findings along with any non-final disciplinary recommendation they deem proper to the Sheriff. The Sheriff may then update the Chairperson of the BOCC to maintain situational awareness. At all times the Sheriff shall be the final decision maker on how to proceed with addressing the employee up to and including discipline or termination.

    **f.** If, after entry of this SDJ, BOCC or County personnel discover a supervisory POST-Certified ECSO employee, or a non-POST-Certified civilian ECSO employee, committed a potential violation of federal or state wage laws, BOCC shall promptly engage an independent third-party investigator to conduct the investigation who has the licensure appropriate to the scope of the investigation. The day it engages such independent third-party investigator, BOCC shall notify the Sheriff of the fact the investigation is occurring and the name of the employee or employees under investigation for alleged violation of federal wage laws or state wage laws. After completion of its investigation and of any final report, whether written or verbal, as part of the investigation, the third-party investigator shall present its findings to the BOCC and the Sheriff in compliance with all applicable statutes including, but not limited to,

10

C.R.S. § 24-6-402. At all times the Sheriff shall be the final decision maker on how to proceed with addressing the employee up to and including discipline or termination.

        **g.**      In the (hopefully unlikely) event the subject of investigation is the Sheriff, due to allegations of purported violation of either federal or state wage laws or federal or state labor, EEO, anti-discrimination, or anti-retaliation laws, then the BOCC shall promptly engage an independent third-party investigator to conduct the investigation who has the licensure appropriate to the scope of the investigation. The day it engages such independent third-party investigator, BOCC shall notify the Undersheriff of the fact the investigation is occurring and the fact the Sheriff is under investigation for alleged violation of federal or state laws (given the Undersheriff may have to assume the duties of the Sheriff temporarily), and the Undersheriff shall not share information learned during this notification with anyone unless compelled by an order of a Court or administrative agency of competent jurisdiction. After completion of its investigation and of any final report, whether written or verbal, as part of the investigation, the third-party investigator shall present its findings to the BOCC, and the BOCC shall share the results of the investigation with the Sheriff in compliance with all applicable statutes including, but not limited to, C.R.S. § 24-6-402.

        **5.**      <u>BOCC Annual Inspection of Elbert County Detention Facility</u>

At least once per calendar year, the BOCC shall conduct an in-person visual inspection of the Elbert County Detention Facility, and the BOCC shall correct all irregularities and improprieties therein found during such inspection. *See* C.R.S. § 17-26-126.

        **6.**      <u>Post-Accident Procedures for a Motor Vehicle Accident during the Use and/or Operation of County-Owned Motor Vehicles</u>

        **a.**      If any ECSO employee is involved in a motor vehicle accident

11

("MVA") while using and/or operating a County-owned motor vehicle, the ECSO shall refer the investigation of the matter to a third-party law enforcement agency, with the first choice being the Colorado State Patrol ("CSP"), and if CSP is unable to respond within one hour, then a neighboring law enforcement agency (*e.g.*, Parker Police Department, Castle Rock Police Department, El Paso County Sheriff, Douglas County Sheriff, Lincoln County Sheriff, Arapahoe County Sheriff, etc.).

  **b.**  The Sheriff or the Sheriff's designee shall report an MVA involving any ECSO employee operating a County-owned motor vehicle, where there has been damage to the motor vehicle, other county property, and/or private property, to the County Fleet Manager or designee within 72 hours of its occurrence.

  **c.**  If the third-party law enforcement investigator has reasonable suspicion that the ECSO employee involved in the MVA is under the influence of (or impaired by) alcohol or other substance, including but not limited to a controlled substance regulated by the state or federal government, then all applicable laws related to driving under the influence, driving while impaired, and the rights of the accused shall be applicable, including but not limited to the provisions of C.R.S. §§ 42-4-1301 *et seq.* Any ECSO supervisor who also responds to the scene of the MVA shall accompany the employee to any facility where the appropriate testing may be administered.

  **d.**  The Sheriff shall have sole and final discretion regarding whether to impose any adverse employment action based on the results of any drug test or alcohol test administered under this Section III.B.6.

  **e.**  The written results of any drug test and any alcohol test administered under this Section shall be transmitted only to the Sheriff, absent an order of a Court of competent jurisdiction. Upon his receipt of such results, the Sheriff shall disclose the

results obtained to the ECSO employee who is the subject of the test and (if the test is positive) shall advise only the Chairperson of the BOCC, and shall do so only verbally, of the facts of the testing occurring and the results obtained. *See City & Cnty. of Denver v. Casados*, 862 P.2d 908, 910 n.6, 914 (Colo. 1993) (reasonable-suspicion drug testing for current public employees not facially unconstitutional). Such advisement under this Order, and the transmission of the results of the test to the Sheriff by the covered healthcare entity which administers the test, shall constitute a narrow exception to the privacy requirements of the Health Insurance Portability and Accountability Act of 1996 and its implementing regulations, *see* 45 C.F.R. §§ 164.502, 164.512(f)(1)(ii)(A), to the extent required by HIPAA. The Chairperson of the BOCC shall not share information learned during this verbal advisement with any third party unless compelled by an order of a Court of competent jurisdiction. The mere collection of the test results in this manner does not violate any assumed privacy interest because the information is sufficiently protected against public disclosure. *See NASA v. Nelson*, 562 U.S. 134, 147-48 (2011) (approving government's ability to collect drug-use-related private background information on its own employees) ("[T]he Government has a much freer hand in dealing 'with citizen employees than it does when it brings its sovereign power to bear on citizens at large.'" (quoting *Engquist v. Or. Dept. of Agric.*, 553 U.S. 591, 598 (2008))).

    **7.**    <u>Other Agreements Relating to County-Owned Motor Vehicles</u>

        **a.**    If one does not exist, the Sheriff, and not the County or the BOCC, shall establish a policy governing the use and/or operation of all County-owned motor vehicles allocated to the ECSO.

    **b.**  All ECSO employees are subject only to the ECSO's drug and alcohol testing policies.  Only non-ECSO county employees, managers, and officers are subject to the drug and alcohol testing requirements of the County's Public Works Fleet Vehicle Management Policy duly recorded in County files by the County Recorder on July 24, 2024.

    **c.**  The ECSO Fleet Manager and the County Fleet Manager, each of whom shall be an exempt supervisor, shall have and exercise joint authority to coordinate maintenance and repair of County-owned motor vehicles used by the Sheriff or any ECSO employee.

    **d.**  All County-owned motor vehicles used by the Sheriff or any ECSO employee, which need maintenance or repair, shall first be taken to the County's in-house maintenance and repair shop to have such maintenance or repair be performed.  If the County's in-house maintenance and repair shop cannot repair the County-owned motor vehicle in a timely fashion, the County-owned motor vehicle must be taken to one of the County-approved third-party vendors for such maintenance or repair.

    **e.**  If there are insufficient County-approved third-party maintenance or repair vendors for a given automotive service line, the Sheriff shall work with the BOCC Commissioner who is the public safety liaison to the ECSO to generate letters with that Commissioner's signature to no fewer than three third-party maintenance or repair vendors located in the County for the purpose of soliciting bids for the service line in question.

    **f.**  If the County-owned motor vehicle must be taken to one of the County-approved third-party vendors for such maintenance or repair, the Sheriff shall ensure only ASE-certified technicians perform any maintenance or repair work on a County-owned motor vehicle used by the Sheriff or any ECSO employee.

    **h.**  If the County-owned motor vehicle must be taken to one of the County-approved third-party vendors for such maintenance or repair, the County Fleet Manager (with the input of the ECSO Fleet Manager) has final decision-making authority as to the location and type of repair.

   **8.**  <u>Other Agreements Regarding County Information Technology and Electronic Records</u>

    **a.**  Except for the ECSO's access to the NCIC system, the CCIC system, and any other protected criminal database, the ECSO shall follow the County's electronic usage policy, the County's electronic records policy, and any other state and/or federal laws regarding government and/or criminal records.

    **b.**  The County's Information Technology Department shall develop, implement, and maintain a functionality in the County's electronic personnel system for ECSO staff to acknowledge that, apart from the County's electronic usage policy and the County's electronic records policy, they are subject to ECSO policies rather than County policies.

   **9.**  <u>Right to Cure, Meet and Confer, and Alternative Dispute Resolution</u>

    **a.**  Right to Cure: If a dispute arises as to the duties and responsibilities of the Parties, wherein one party claims that another has violated the terms of this SDJ, then the Party asserting such shall initiate the right-to-cure process. The alleging Party and the Party accused of failure to adhere to his/its obligations under the terms of this SDJ shall meet, either in-person or via a virtual platform such as Zoom, WebEx, or Microsoft Teams, and confer in good faith for a fulsome discussion of the dispute in order to attempt to informally resolve the dispute. Either party may record the session for future reference, but the recorded session is subject to the conditions of Rule 408 of the Colorado Rules of Evidence, shall not constitute a

public record under the Colorado Open Records Act or the Colorado Criminal Justice Records Act, and may not be used as evidence in any proceeding whether before a court in this state or any other official proceeding before a presiding body and/or individual including, but not limited to, commission meetings and/or executive sessions. *See* C.R.S. § 24-72-204(3)(a)(IV); *DiPietro v. Coldiron*, 523 P.3d 1019, 1024-25 (Colo. App. 2022) ("[T]o conclude that the records protected by the deliberative process privilege or the attorney-client privilege are nevertheless subject to disclosure to any person who is the subject of the records at issue would produce an absurd result, which we must avoid. . . . [P]ublic disclosure of certain communications would deter the open exchange of opinions and recommendations between government officials, and it is intended to protect the government's decision-making process, its consultative functions, and the quality of its decisions." (internal citation and internal quotation omitted)..

    **b.**  Meet and Confer: during and after the first meet-and-confer session for the dispute for which the right-to-cure process was initiated, the Parties shall endeavor in good faith to work towards a resolution of the dispute, and by 21 days after the last meet-and-confer session respecting the dispute for which the right-to-cure process was initiated, the Parties shall assess whether the dispute has been resolved; and if it was resolved to the satisfaction of both Parties, the Parties shall document the resolution in writing via exchange of emails confirming the resolution; but if it was not resolved to both Parties' satisfaction, the Parties shall document their impasse in writing via exchange of emails, the Party still asserting it is aggrieved may then petition the Court for injunctive relief, and the email exchange documenting the impasse shall become an exhibit to the application for injunctive relief.

      **c.**      Alternative Dispute Resolution: If the Parties cannot resolve their dispute via the right-to-cure process set forth above, then the Parties agree to mediate their dispute.  The Parties shall exercise best efforts to agree on a mediator with experience in the field of local government and/or constitutional law.  If the Parties cannot agree on a mediator, then each Party shall submit the mediator of his/its choice.  The mediator shall be chosen by the flip of an American Quarter with the standard "head" and "tails" sides representing heads and tails.  The Party alleging breach of the SDJ shall identify whether he/it wants to be heads or tails, and the alleged breaching Party, or his/its designee, shall flip the coin into the air allowing it to land.  The side of the quarter facing up shall indicate which mediator the parties shall utilize.  For example, Sheriff accuses BOCC of violating this SDJ. Parties cannot agree on a mediator. Each party submits one mediator of his/its choice. Sheriff, as the alleging party, will then designate whether he wants to be heads or tails. For this example, Sheriff indicates tails. A member of the BOCC, or designee, shall flip the quarter letting it land on the floor or ground. Tails is facing up. The mediator submitted by Sheriff will be the mediator.

      **d.**      Given the short filing period for relief pursuant to C.R.C.P. 57, C.R.S. §§ 13-51-101 *et seq.*, and/or C.R.C.P. 106, this is not a waiver of any party's right to file a claim pursuant to C.R.C.P. 57, C.R.S. §§ 13-51-101 *et seq.*, and/or C.R.C.P. 106.  If any party hereto files a claim arising from and/or related to an alleged violation of this SDJ, then the filing Party hereby waives all objections to a request by the other Party of a stay of the case until such time as the Parties have complied with the Right to Cure, Meet and Confer, and Alternative Dispute Resolution provisions of this Section.

D.   **Construction of Terms**

Where any general terms set forth in this SDJ are ambiguous or conflict with the specific terms, the specific terms will control.

E.   **Final Compromise**

All Parties agree and acknowledge that this SDJ constitutes a full and complete compromise of this Lawsuit.

F.   **Legal Fees, Costs, and Expenses**

In exchange for the Sheriff's waiver to seek damages on behalf of himself and the ECSO, the County shall pay all legal fees, costs, and expenses for all parties to this Lawsuit, and no legal fees, costs, and expenses related to this Lawsuit shall be deducted from the ECSO's budget.

G.   **Binding Effect**

This SDJ will inure to the benefit of, and be binding upon, all personnel, department heads, and elected officials of the Sheriff, ECSO, BOCC, and County until such time as this agreement is vacated or overturned by a court of competent jurisdiction or until such time as the parties hereto, or their successors reach and file with a court of competent jurisdiction a different agreement.

H.   **Headings**

The headings in this SDJ are for the convenience of the Parties only and will not have any legal effect whatsoever, or in any other way modify the meaning or interpretation of this SDJ.

I.   **Modification of This SDJ**

No provision of this SDJ may be modified except by Order of this Court.

Approved as submitted to the Court this 7th day of July, 2025.

| | |
|---|---|
| s/ Todd Collins | *s/ Matthew J. Hegarty* |
| *Todd Collins, #49544* | Matthew J. Hegarty, #42478 |
| TODD COLLINS & ASSOCIATES, LLC | HALL & EVANS, L.L.C. |
| 724 E. Kiowa Avenue, Suite 5 | 1001 17th Street, Suite 300 |
| P.O. Box 456 | Denver, CO 80202 |
| Elizabeth, CO 80107 | T: 303-628-3300 |
| T: (303) 588-2200 | hegartym@hallevans.com |
| tcollins@tcollinsatlaw.com | **ATTORNEYS FOR DEFENDANTS** |
| **ATTORNEY FOR PLAINTIFFS** | |

SO ORDERED this _____ day of _____, 2025.

BY THE COURT:
DATED August 5, 2025

_____
THERESA M. SLADE
DISTRICT COURT JUDGE

19