1

```
 1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLORADO
 2
       Case No. 24-cv-02013-NYW-CYC
 3     _____

 4     AMY McCRACKEN,

 5          Plaintiff,

 6     v.

 7     BOARD OF COUNTY COMMISSIONERS,
       ELBERT COUNTY, COLORADO,
 8
            Defendant.
 9     _____

10

11              Proceedings before CYRUS Y. CHUNG, United States

12     Magistrate Judge, United States District Court for the

13     District of Colorado, commencing at 9:58 a.m., August 25,

14     2025, in the United States Courthouse, Denver, Colorado.

15     _____

16              WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

17     ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .

18     _____

19                            APPEARANCES

20              AARON SLADE, Attorney at Law, appearing for the

21     Plaintiff.

22              BRITTNEY M. TOWNSLEY and ALEX M. PASS,

23     Attorneys at Law, appearing for the Defendants.

24     _____

25                       DISCOVERY CONFERENCE
```

2

1                  P R O C E E D I N G S

2              (Whereupon, the within electronically recorded

3    proceedings are herein transcribed, pursuant to order of

4    counsel.)

5              THE COURT:  Call Case 24-cv-02013, Amy McCracken

6    against the Board of County Commissioners of Elbert County.

7              I'll take appearances of counsel, starting with

8    the plaintiff.

9              MR. SLADE:  Good morning, Your Honor.  Aaron Slade

10   on behalf of the plaintiff.

11             THE COURT:  Good morning, Mr. Slade.

12             And for the defendant.

13             MS. TOWNSLEY:  Good morning, Your Honor.  Alex

14   Pass and Brittney Townsley for the defense.

15             THE COURT:  Good morning, Ms. Townsley, and good

16   morning, Mr. Pass.

17             MR. PASS:  Good morning, Your Honor.

18             THE COURT:  Mr. Slade, I understand your client is

19   here as well?

20             MR. SLADE:  Yes.  Amy McCracken appears on my

21   left.

22             THE COURT:  Is it McCracken?

23             MR. SLADE:  McCracken, yes.

24             THE COURT:  Okay, I've been saying it wrong all

25   along.

3

1          MS. McCRACKEN:  It's fine.

2          THE COURT:  Good morning, Ms. McCracken.

3          We are here for a discovery dispute. I received

4     the parties' joint statement regarding the second discovery

5     dispute.  I've read through it.

6          Here's what I'm going to do today.  I'm not going

7     to make you go into a back room and talk about it today,

8     unlike the last time.

9          I just have a few pointed questions really today.

10    And I have them for both sides.  I'm going to start with

11    you, Ms. Townsley.

12         And, really, my questions for you are, Why is this

13    coming up now?  I don't mean that in saying that you -- I

14    don't mean it in any kind of legal way, in saying that

15    you've waived the defense or anything like that.  But it --

16    there wasn't a Motion to Dismiss saying, Look, you sued the

17    wrong people.

18         There are some interrogatory answers and requests

19    for production that look like if you really wanted to buckle

20    down and say, Look, the Board of County Commissioners

21    doesn't control the Sheriff's Office, stuff's not in my

22    control, you could have asserted it there, but it's not

23    there either.

24         And so, again, I'm not trying to say that you

25    waived anything, but I can certainly understand why Mr.

4

1    Slade's coming into this thinking, All right, maybe there's

2    a dispute out there, but it doesn't seem to be an obstacle

3    so far.  And then why is it popping up right now when I want

4    to do my 30(b)(6) deposition?

5              So let me start with that.

6              MS. TOWNSLEY:  Sure, Your Honor.  Would you like

7    me to be at the podium?

8              THE COURT:  That's fine.  I mean, you can take,

9    yep, you might as well.

10             MS. TOWNSLEY:  Okay.

11             This is an issue that I feel like we have been

12   trying to bring up.  You'll recall -- I don't know why this

13   is so loud right now.

14             THE COURT:  Ms. Price is taking care of that.

15             MS. TOWNSLEY:  Okay.

16             As you'll recall, at the last Discovery Dispute

17   Conference, we had an entire discussion on the record about

18   the fact that the Sheriff's Office didn't believe that they

19   could disclose records to the Board of County Commissioners

20   if -- essentially, if the Sheriff's Office had been sued,

21   then under the sealing statute, then it could have been

22   produced under the discovery.

23             But I mean, frankly, it's not something that we've

24   necessarily been -- it's not something we're hiding the ball

25   on.  We've tried to make this as clear as possible.

1          I told Mr. Slade that if he wanted the Sheriff to

2    write a notice requesting the Sheriff, then I would do what

3    I needed to do to make sure that he was produced.

4          THE COURT:  And to be clear, you'd be defending

5    the deposition if somebody from the Sheriff's Office was

6    noticed, right?  I mean, I don't know you, but you or Mr.

7    Pass, or somebody --

8          MS. TOWNSLEY:  Most likely, but that's not

9    something that's been arranged at the current time.

10          MR. PASS:  Your Honor, if I may real quick, we may

11   have defended that deposition, but we're not certain if the

12   Sheriff's Department would have retained us to defend that

13   deposition.

14          THE COURT:  Okay.  All right.  So, I mean, I'm

15   looking through my notes from the last hearing.  I see

16   something about the sealing statute, but the sealing statute

17   has to do with, you know, certain criminal cases.  And --

18          MS. TOWNSLEY:  And those were the key --

19          THE COURT:  I don't remember this issue being

20   squarely brought up the last time around.

21          MS. TOWNSLEY:  It was -- it was discussed in --

22   within the discussion of those criminal statutes.  We had

23   the discussion of under the sealing statute, that it does

24   not prevent disclosure through the operation of discovery,

25   so long as it's being disclosed to the party that they --

6

1    the records are about, or to a law enforcement agency when

2    we discussed the Board of County Commissioners is not a law

3    enforcement agency.

4              So, I don't know that we necessarily went into all

5    of the details of it, but we did have that specific piece of

6    the discussion.

7              THE COURT:  Yeah.  I think that's a little bit

8    ancillary -- I'm not trying to accuse you, Ms. Townsley, of

9    hiding the ball.  That's not really the point of this

10   discussion.

11             It's just, you know, I'm trying to approach this

12   from a practical perspective.

13             Here's -- on the merits of the issue, is the

14   Sheriff's Office -- are they under the control of the Board

15   of County Commissioners?

16             I get what Mr. Slade is saying:  That if he wants

17   to sue the county, he's got to sue the Board of County

18   Commissioners.  I get that.

19             I also get that there's a position that says,

20   Look, the Board of County Commissioners isn't responsible

21   for what the Sheriff's Office does.

22             And it looks like, under Coates against Adams

23   County Sheriff's Office, 631 F. Supp. 3d 976 -- 997 through

24   998, there's a split in this district as to whether the

25   Sheriff's Office is the proper defendant or not, or could

7

1  be.

2         I'm not deciding that today, that's not happening.

3  Because if that's the issue that you all want me to decide,

4  that's going to be a motion, because I don't think that's

5  something that's necessarily the nature of an informal

6  discovery dispute.

7         What I see is, Mr. Slade wants somebody to be able

8  to answer on what the Sheriff's Office policies are, how

9  they came about --

10         MS. TOWNSLEY:  Um-hmm.

11         THE COURT:  -- how they're implemented.

12         He's frustrated that the Chairman of the Board

13  wasn't able to do that.  I'm trying to figure out what --

14  what went awry, because here's what I would think would

15  happen.

16         He would notice the deposition.  It's got 30(b)(6)

17  topics.  You take a look at it and says, Well, you know,

18  three-fourths of these topics have to do with the Elbert

19  County Sheriff's Office, my guy's not going to be able to

20  answer all that stuff.  You're going to come to the

21  deposition and be super frustrated and he's just not going

22  to be able to be prepared for it because he knows about the

23  stuff that happened with the Board, doesn't know what

24  happened with the Sheriff.

25         MS. TOWNSLEY:  And I did say that to Mr. Slade in

8

1    an email prior to this deposition taking place while we were

2    going over the topics and he continued to move forward.

3          This -- I told him that in an email prior to him

4    serving the Amended Notice of Deposition, expecting the

5    Notice of Deposition to request somebody from the Sheriff's

6    Office, not a representative that's authorized to testify on

7    behalf of the Board.  I have multiple emails I'd be happy to

8    submit that say --

9          THE COURT:  I --

10          MS. TOWNSLEY:  -- he can tell you what the Board

11    knows.  As to the rest of it, I'm not sure.  We'll just --

12    you can ask him, but he can only testify to what the Board

13    knows.

14          THE COURT:  And why isn't he rely -- reasonably

15    relying on, Well, you know, look, I served you -- I served

16    the Board, right, with Requests for Production and

17    Interrogatories, and these things had to do with the Elbert

18    County Sheriff's Office.  Those got answered.  Why can't you

19    designate somebody to come in and say, Look, here's the

20    stuff about the Sheriff's Office, right?

21          You don't have to designate just one person. You

22    could designate the chairman to talk about Board stuff, and

23    then some sergeant or some captain or something like that

24    from the Sheriff's Office about Sheriff's Office stuff.

25          So why not designate two witnesses?

9

1          MS. TOWNSLEY:  Because I can't designate somebody

2     that works solely for the Sheriff's Office, hired by the

3     Sheriff's Office, whose entire job is controlled by the

4     Sheriff's Office, other than signing the checks, and have

5     them testify as a representative of the Board.  They don't

6     have that authority.

7          THE COURT:  So why can you bring in -- why can you

8     answer Interrogatories and Requests for Production that have

9     to do with the Sheriff's Office, but not a 30(b)(6)

10    deposition?

11         MS. TOWNSLEY:  That was purely out of the

12    cooperation of the Sheriff's Office, but I can't authorize

13    somebody to testify from the Sheriff's Office on behalf of

14    the Board.

15         Those were certified by the Elbert County -- by

16    Elbert County, as well. They were sent to multiple people.

17    We gathered information through the cooperation of the

18    Sheriff's Office.

19         THE COURT:  All right.  So why can't the Sheriff

20    cooperate, right?  And Mr. Slade's position is, Well, if

21    you're not going to designate a Sheriff's employee, why

22    can't -- I forget who the deponent's name was, but whoever

23    it was --

24         MS. TOWNSLEY:  Um-hmm.

25         THE COURT:  -- go talk to a captain or a

1  lieutenant or somebody from the Sheriff's Office and read up

2  so that he has enough information to answer these questions?

3         MS. TOWNSLEY:  He was provided with all, but one

4  policy that Mr. Slade brought into the deposition to review.

5  He was provided with the investigative materials available

6  that have been disclosed in discovery.  He was provided with

7  our discovery responses.  And there was a meeting.

8         I'm not required to prep the witness on what the

9  Sheriff knows if the witness that was requested was on

10 behalf of the Board.  I can't impute Sheriff's knowledge to

11 a member of the Board through that process.

12        THE COURT:  Right.  I mean, but his -- his

13 frustration -- and, again, I am not a fan of, The other side

14 did it, and so therefore, I get to do it.

15        I'm not trying to say that there's any sort of

16 conduct by waiver.  But these interrogatories were also

17 directed towards the knowledge of the Sheriff's Office, they

18 got answered.  And he's wondering, Well, those got answered.

19 Why can't somebody answer it when I want to ask it in

20 person?

21        MR. PASS:  Your Honor, if I may, just really

22 quick.

23        I think the issue here is he wanted somebody that

24 was authorized to speak on behalf of the Board.  And that

25 language there was kind of the stopping point, that nobody

1    at the Sheriff's Department, including the Sheriff, was

2    authorized to speak on behalf of the Board.

3              If he would have just requested somebody to speak

4    to these issues, that would have been a non-issue and we

5    would have produced somebody, or somebody would have been

6    produced.

7              THE COURT:  I mean, a 30(b)(6) speaks on behalf of

8    the organization.  That's just the nature of what it is.

9              I don't know that Mr. Slade is trying to go beyond

10   that by saying -- I mean, he can correct me if I'm wrong.

11             But I think, really, what he's saying, You're

12   speaking on behalf of the Board.  What he's saying is,

13   You're the defendant, you're the organizational defendant.

14   I'm noticing a 30(b)(6) deposition.  Your statements are

15   binding as to the organization.  As it is with any 30(b)(6)

16   deposition.

17             You notice a deposition for a corporation.

18   Someone comes in, they're speaking on behalf of the

19   corporation.  He just wants somebody to be speaking on

20   behalf of the defendant.

21             MR. PASS:  Your Honor, quite frankly, the 30(b)(6)

22   deposition notice should have been served to the Sheriff

23   then.

24             THE COURT:  Okay.  The --

25             MS. TOWNSLEY:  And if I may, Your Honor, the

12

1    written interrogatories, those are a little bit different.

2           The Board was not going to get somebody from,

3    essentially, an outside agency to answer questions that they

4    are going to be bound to, without knowing every question in

5    advance.  I can't -- I simply can't do that.  I genuinely

6    believe that that would be unethical.

7           THE COURT:  I mean, you could have taken the

8    position earlier on, right? the interrogatories -- you know,

9    these things are outside of the knowledge of the Board.  And

10   you know, I suggest that you go subpoena the Sheriff's

11   Office for them.

12          MS. TOWNSLEY:  Yes.

13          THE COURT:  Okay.

14          MS. TOWNSLEY:  That may be true.

15          Let me talk with Mr. Slade for a second.

16          MS. TOWNSLEY:  Thank you.

17          THE COURT:  So, Mr. Slade, this is the flip side

18   of the practical argument for you.

19          I don't think necessarily -- I mean, if I say that

20   you're not waiving the position that the Sheriff's Office

21   is, right, the appropriate or inappropriate defendant in

22   this case, and whether the Board of County Commissioners is

23   or isn't -- if I say that you're not waiving anything by

24   serving a 30(b)(6) deposition on notice on the Sheriff's

25   Office, why not just do that?

13

1          MR. SLADE:  Why not just serve a notice of a

2    30(b)(6) deposition on the Sheriff's Office?

3          THE COURT:  Right.

4          MR. SLADE:  Because they're not the defendant in

5    this case.

6          THE COURT:  I mean you'd have to subpoena them in

7    order to make them answer.

8          MR. SLADE:  Right.  But that's not what we're

9    seeking with this deposition.

10         What we're seeking from this deposition is

11   testimony binding on the County.  I understand that, by

12   statute, we have to name the Board of County Commissioners.

13         But, in reality, what we're suing -- who we're

14   suing is Elbert County, Colorado.  They provide a law

15   enforcement service.

16         According to cases interpreting Title II of the

17   ADA and CADA, you have to name the public entity itself; you

18   can't name individual officers for that type of public

19   entity services.

20         THE COURT:  Right.  Their position is the

21   entity -- the public entity is the Sheriff's Office, it's

22   not the County.  That's their position.

23         MR. SLADE:  Right.  And if that is their position,

24   that could have been raised in a Motion to Dismiss early on

25   in this litigation.  That was not brought to our attention

14

1    that we had named the wrong defendant, and it is our

2    position that we have not named the wrong defendant.

3            THE COURT:  Yeah.  And that's not before me.  I'm

4    not --

5            MR. SLADE:  Absolutely.

6            THE COURT:  -- deciding that.  I'm certainly not

7    deciding it today.  They may bring it up later on in a Rule

8    56 motion.  I don't know.  Maybe they do.  Maybe they don't.

9            And I don't know that that's one of the defenses

10   that you waive by not bringing it in a 12(b)(6).  I don't --

11   I'm not sure if it is or it isn't.

12           MR. SLADE:  I'm not sure either.

13           THE COURT:  But that's, again, it's not -- that's

14   not before me.

15           MR. SLADE:  To clarify, we could certainly get

16   fact testimony from individual officers and we plan to do

17   that.  But that's not the purpose of this 30(b)(6)

18   deposition.

19           What we're looking for is testimony binding on the

20   named party in this case, which is the Board of County

21   Commissioners of Elbert County, Colorado, which is a

22   formality for Elbert County, Colorado.

23           Elbert County, Colorado provides a law enforcement

24   service.  That is the Elbert County Sheriff's Office.  We

25   need to understand testi- -- or we need to take testimony

1  binding on the County to prove our claims that the provision

2  of that service was discriminatory.

3          THE COURT:  Right --

4          MR. SLADE:  So the most knowledgeable person of

5  those topics, in Plaintiff's view -- it's not our decision,

6  it's their decision -- would be someone from the Sheriff's

7  Office.  That's what we would request today.

8          If that's -- if they're not -- unwilling to do

9  that, again that's totally Defendant's purview.  That's

10  their decision who they designate, then we need to have Mr.

11  McDaniel prepared.

12          He needs to talk with the Sheriff's Office.  He

13  needs to understand why those decisions are made, how those

14  policies are created, that sort of thing.

15          THE COURT:  And his position -- or their position,

16  is he can't speak on behalf of the Sheriff's Office because

17  they're a constitutionally distinct entity.

18          MR. SLADE:  That -- if that's their position, then

19  that was not properly raised before this Court in terms of,

20  like I said, a Motion to Dismiss, Motion to Substitute

21  Parties, something like that.

22          And again, our authority supports that the

23  Sheriff's Office is a subpart of the County.

24          THE COURT:  Yeah.  I recognize that there's

25  authority going your way. I also recognize authority going

16

1    their way.  I mean --

2            MR. SLADE:  Well, as far -- and to address the,

3    whatever -- and if you would want to point me to specific

4    authority going their way -- I did make the point to address

5    that there are Monell decisions, cases interpreting Monell

6    theories of liability under 42 U.S.C. Section 1983, in which

7    if a person is suing for a final policy-making authority for

8    a constitutional violation, a sheriff named in his

9    official -- his or her official capacity could be a possible

10   defendant.

11           Those are the cases that tend to say that they're

12   a separate distinct entity because in those -- in that

13   context of a policy-making authority or a policy-making

14   decision, that could be the right defendant.

15           If the Board of County Commissioners is literally

16   not making policy, then, you know, as a Monell plaintiff,

17   you're going to have to go for that final policy-making

18   authority.

19           That's just simply not the case here.  We have a

20   provision of services by a government entity.  The statutes

21   that we've sued under require naming the public entity and

22   Defendant cannot circle around that duty to name an

23   appropriate witness.

24           THE COURT:  It doesn't look like it's just Monell

25   liability.  Coates collects a bunch of cases at 631 F. Supp.

17

1    3d 976, including Judge Martinez's decision in Chavez

2    against Board of County Commissioners of Lake County, 426 F.

3    Supp. 3d at 802.  And then citing to the Colorado Court of

4    Appeals decision in Tunget against Board of County

5    Commissioners in 992 P.2d, 650; in Bristol against Board of

6    County Commissioners 312 F.3d 1213, it's a Tenth Circuit

7    decision.  They have to do with 1983 actions, but it's not

8    simply on a theory of Monell liability.  I mean, that case

9    also cites authority going the other way, going your way.

10           Jones against Valdez, which is what they cited in

11   their briefing.  That's a case from Judge Crews down the

12   hallway, where he seems to think that they are distinct and

13   so you sue the Sheriff and you don't sue the County.

14           I don't have a view on it right now.

15           MR. SLADE:  I also -- I will just note that the

16   last case you cited, I believe is a Title VII employment

17   discrimination case, which involves an analysis of joint

18   employer liability.

19           THE COURT:  Right.  And so it's in different

20   contexts, not just Monell liability.

21           I think -- I mean, it's a live issue. It's a weird

22   issue to be deciding about who gets properly noticed as the

23   30(b)(6).

24           So, Mr. Slade, you can either depose somebody from

25   the Sheriff's Office, with a notice to the Sheriff's Office.

18

1    Or you all can brief this as a motion, but it's going to

2    take much longer to decide this as a motion than it would

3    for me to decide this informally.

4          But I don't think it's a matter for me to decide

5    informally because it is something that there's a split of

6    authority in this district. I think I can decide it one way

7    and then Judge Wang could simply go the other way, as well.

8          And she's the one ultimately presiding over the

9    case.  She may, I mean, not refer it to me.

10         So normally, the point of these discovery dispute

11   procedures is when the -- when I can make a relatively clear

12   ruling, based on -- or a relatively quick ruling, based on

13   my understanding of the case.  I don't think I can do that

14   with this particular dispute because of the split of

15   authority in this district.  That's my opinion on it.

16         But tell me if you think I'm wrong about that or

17   what you want to do.

18         I mean, it may be that, yes, you take a deposition

19   of the Sheriff's Office and then later on, you know, you run

20   into trouble because you try to use it as an 801(d)(2)(E)

21   against the County and they say, Look, that wasn't me, that

22   was the Sheriff's Office.

23         I don't know. I don't know if that's what's going

24   on here.  Or if it's preferable for you to get somebody on

25   the record from the Sheriff's Office sooner, rather than

19

1   later.  Or whether you want to tee this issue up and have me

2   look at it at a motion, because I think I'd need relatively

3   full briefing in order to look at the legal issue.

4           MR. SLADE:  Here's Plaintiff's position is, as the

5   Court pointed out, this could have been raised earlier and

6   now it's prejudicing Plaintiff to have a further delay

7   because this was not resolved on the Motion to Dismiss which

8   they raised.

9           They had the opportunity -- I'm not saying it's

10  waived, I don't have authority to say they waived it.  But

11  what I'm saying is that, practically speaking, by asking the

12  parties to brief this as a motion now, that's really only

13  prejudicing Plaintiff at this point.

14          They've taken the stand that members of the

15  Sheriff's Office can sign written testimony in the form of

16  interrogatories by someone from the Sheriff's Office.  That

17  gives us every indication that we've named the right party.

18  Counsel has explained that they're cooperating or, at least,

19  they cooperated in terms of that discovery request.

20          And so by, you know, refusing to allow us to take

21  the -- to essentially hold Defendants by the position that

22  they've taken, which is that someone -- you know, members of

23  the Sheriff's Office in their official capacities will

24  testify on behalf of the defendant, we are now prejudiced by

25  not being able to proceed with our discovery and waiting for

1   a motion that should have been filed, you know, months ago

2   to be decided.

3          THE COURT:  I disagree that you're being

4   prejudiced by having to file a motion, but I just -- I have

5   to be able to decide a legal issue with legal briefing.  And

6   I don't think it's an issue that's appropriate for -- for

7   sort of informal dispute.

8          I don't think by -- by way of informal discovery

9   dispute, that it is appropriate for me to tell the County

10  that you have to waive the separateness between yourself and

11  the Sheriff's Office.  I just don't think that's appropriate

12  on this sort of procedure, Mr. Slade.

13         MR. SLADE:  I do think it's appropriate, though,

14  that you hold them to the position that they've already

15  taken, which is in the signed discovery responses.

16         MR. PASS:  And I request clarification on what

17  that position is.

18         THE COURT:  When I want to hear from you, I will

19  ask for your input.

20         MR. PASS:  Yes, Your Honor.

21         THE COURT:  Okay.  I understand that then, but I

22  don't know that it's -- I mean, that's why I was pressing

23  Ms. Townsend on it earlier, because I don't know that it

24  necessarily was their position because I was trying to

25  figure that out.  And I don't know what legal principle says

1    to me that, Well, you took a position that could be

2    interpreted as inconsistent before with the one that you're

3    taking now and so I'm going to hold you to that going

4    forward.  I don't know what the legal principle is that

5    allows me to do that on an issue that is significant, like

6    this.

7          I mean, I find it odd that it wasn't raised

8    earlier because this seems like the sort of thing that you

9    would raise on a Motion to Dismiss because it seems so

10   fundamental to the progression of the case.

11         I don't know why it wasn't sought out earlier, but

12   I don't know what the legal rule allows me to say, Well,

13   now, no, you can't go to that position.  I don't know what

14   allows me to do that.

15         MR. SLADE:  The legal principle is that they've

16   designated a witness to testify on behalf of the County

17   through written interrogatory responses, which is Chad

18   Church, which I don't know who that is.  I would love to ask

19   Defense Counsel who that is.

20         Based on a Google search, that's the commander for

21   the Elbert County Sheriff's Office.  That person has

22   testified on behalf of the Board of County Commissioners

23   through interrogatory responses.  I think it is well within

24   our right and within the Court's right to say that person

25   has already represented that they are willing to provide

22

1    testimony on behalf of the County, whether it's in the form

2    of an interrogatory or in the form of a deposition.

3            THE COURT:  Other than the fact that the Chairman

4    of the Board didn't know who Chad Church was, I didn't even

5    know who Chad Church was before coming into here right now.

6            So it's really difficult for me to come in and

7    say, All right, based on that, I'm going to bind you and say

8    that --

9            MR. SLADE:  Well --

10           THE COURT:  -- you used a commander before and so

11   now you've got to be able to use the Sheriff's Office for

12   everything.

13           MR. SLADE:  No.  And I'm not asking you to bind

14   them.  I'm asking them to bind themselves, which they have

15   done, through that -- they have the choice of who's going to

16   answer on behalf of the Board of County.

17           THE COURT:  You're asking me to order them to

18   bring somebody from the Sheriff's Office to bind the County.

19           MR. SLADE:  No, sir.  What I'm asking for is that

20   either -- again, our preference would be someone from the

21   Sheriff's Office, but that's not our choice.  It's a

22   30(b)(6), they have the purview to decide.

23           Our position is if Mr. McDaniel is the witness, he

24   testified multiple times in the deposition that he had every

25   ability to speak with the Sheriff's Office, I believe his

23

1    quote was, I hadn't thought of that in terms of preparing

2    for this deposition.

3           Whether it's Mr. McDaniel, whether it's someone

4    from the Sheriff's Office, the defendant has a

5    responsibility to prepare adequately, or prepare a witness

6    to testify on the topics that the parties have already

7    agreed to.

8           THE COURT:  Okay.

9           Let me talk with Ms. Townsley again.  Or if, Mr.

10   Pass, if you want to take this one, you're free to do so.

11          MR. PASS:  Your Honor, I'll let Ms. Townsley.  I

12   suppose it depends on the question.

13          THE COURT:  So, Ms. Townsley, if -- sorry.  What's

14   the deponent's name again?

15          MS. TOWNSLEY:  Byron McDaniel.

16          THE COURT:  Mr. McDaniel.

17          So if Mr. McDaniel has the ability --

18          MS. TOWNSLEY:  Um-hmm.

19          THE COURT:  Apparently testified -- I can't say I

20   read the entire deposition transcript -- but Mr. Slade tells

21   me that he testified, Look, yeah, I could talk to the

22   Sheriff, I just didn't.  Why can't he do that?

23          MS. TOWNSLEY:  What he actually said was that he

24   didn't know if that was appropriate to do.  And, actually,

25   the requirement, pursuant to Rule 30(b)(6), is that Mr.

1    McDaniels be prepared to testify as to what information is

2    reasonably accessible to the Board.

3            I can't have Mr. McDaniels sit down with the

4    Sheriff and think -- try to come up with every single

5    question about why they did this versus that, and glean

6    every single answer as to why the Sheriff's office is run

7    the way that it's run, when Mr. McDaniel, frankly, doesn't

8    have the time; the Sheriff doesn't have the time.  And

9    there's no statute that requires me to make them do that.

10           THE COURT:  Well, he says that, Look, you've

11   already used the police commander to testify --

12           MS. TOWNSLEY:  Um-hmm.

13           THE COURT:  -- in the form of interrogatory

14   answers --

15           MS. TOWNSLEY:  Um-hmm.

16           THE COURT:  -- on behalf of the County.  Why can't

17   the police commander do that again?

18           MS. TOWNSLEY:  Because that specific commander was

19   given specific authority, after those requests were reviewed

20   by the appropriate representatives, to respond to those

21   questions.

22           He has not been given blanket authority to sit

23   down for seven hours and answer questions about why his boss

24   did one thing versus another that is then going to be

25   binding on the Board.

**PATTERSON TRANSCRIPTION COMPANY**
scheduling@pattersontranscription.com

25

1          THE COURT:  All right.  Let's do this a different

2     way then.

3          Mr. Slade, you don't have to switch the places.

4          How about a deposition on written questions?

5          MR. SLADE:  Can you clarify?  I understand that's

6     an option under Rule 30.  But are you saying, instead of

7     taking a 30(b)(6)?

8          THE COURT:  That's my question.  If you want to

9     know what the answers are, you want somebody to bind -- to

10    be bound on behalf of the County, it seems like the real

11    problem from the County's end is they don't know what the

12    questions are going to be ahead of time, they don't want to

13    designate somebody from the Sheriff's Office to bind the

14    County with respect to questions they don't know.

15         And so if you're going to go around in a live oral

16    deposition, then they're going to keep -- what's going to

17    happen is, you're going to ask the question and then they're

18    going to be -- they're going to say this person doesn't have

19    the authority to answer that particular question.  Or I

20    don't know if they do.

21         And you're going to be going back and forth and it

22    takes a long time.  If you submit a list of questions ahead

23    of time and then it seems, like, perhaps, they'll be able to

24    get a specific authority for -- for the commander, or

25    whoever it is, to answer those questions.

1         It seems like what you want, right, is you want

2    someone to bind the County.  It seems like what they need is

3    some sort of advanced notice in order to ask -- I don't know

4    if it's the Board of County Commissioners, but to give

5    someone specific authority to answer those questions on

6    behalf of the County.  Seems like a deposition on written

7    questions.

8         I've never seen one done but I know it's done.

9    It's theoretically possible.  It seems like, in a case like

10   this where what you want is somebody to say, This is what we

11   do, right?

12        Then if you do that, then it seems like they might

13   be able to get the authority.  I don't know if they can.

14   But it seems like that's what happened for the

15   interrogatories.

16        So if that's what can happen for this and then you

17   get somebody binding the County, they get somebody with

18   knowledge answering the questions, with authority in

19   advance, it seems like this is the most expeditious way to,

20   perhaps, get to where you want to go.

21        MR. SLADE:  I tend to agree --

22        THE COURT:  I know that other people can't stand

23   up if you can't, so stand when you're speaking.

24        MR. SLADE:  Oh.

25        I tend to agree.  However, I'm concerned -- my

27

1    concern would be that we submit our questions and we get

2    responses similar to the responses that we got in the live

3    deposition, which was:  I don't know, I don't have authority

4    to speak on behalf of the Elbert County Sheriff's Office.

5              And if we can get some sort of representation

6    that, yes, submitting these questions would actually give

7    us -- I think the way you put it was -- prepared and

8    knowledgeable responses, that I'm totally fine with.  But

9    I'm just concerned, because of the position that the County

10   has taken so far.

11             THE COURT:  Yep.  Okay.

12             I think the reason for that position is somewhat

13   different.

14             So, Ms. Townsley, if he gets you a list of

15   questions, right --

16             MS. TOWNSLEY:  Um-hmm.

17             THE COURT:  -- can you make sure that it goes to

18   somebody who can actually answer them?  And then you'll

19   find -- it'll take her some time, Mr. Slade.

20             MR. SLADE:  Sure.

21             THE COURT:  Can you take the time to go back to

22   your client and say, Look, I need somebody from the

23   Sheriff's Office to be able to answer these questions

24   because if I go back to Mr. Slade and what I give him is,

25   Hey, I'm some other junior member of the Board of County

1  Commissioners and I got no idea what the answers to these

2  questions are, we're going to be back in front of Judge

3  Chung again.  And you don't want to do that.  You don't want

4  to do that.

5         Can I get your assurance on the record today that

6  you'll make your best efforts to go back to your client to

7  find somebody who is knowledgeable and say, Look, what I got

8  out of the judge is I got a list of questions ahead of time,

9  nobody's going to be put on the spot with Mr. Slade's, you

10 know, ingenious on-the-spot kind of question.

11        They'll get advance notice of what the questions

12 are.  You can procure authority for a particular person from

13 the Sheriff's Office to answer those questions.  He gets

14 what he wants in terms of somebody answering questions on

15 behalf of the County.  You get what you want in terms of

16 nobody's having to bind the County to some random questions

17 they didn't anticipate.

18        How about it?

19        MS. TOWNSLEY:  Yes, Your Honor.

20        THE COURT:  Okay.

21        MR. SLADE:  I would just reserve the right -- to

22 Plaintiff would like to reserve her right to take a

23 additional -- either additional deposition testimony or

24 additional written questions if, in the event that the

25 answers are not provided in a knowledgeable way.  I don't

29

1    know how else to put it.

2        THE COURT:  I mean, I think the rule is that if

3    there's good cause to take an additional deposition of a

4    30(b)(6) witness, then I am obligated to grant that.  But

5    it's a matter of me examining whether there's good cause or

6    not.

7        I won't know the answer to that until after you

8    all go through.

9        Does that make sense, Mr. Slade?

10        MR. SLADE:  Yes.

11        THE COURT:  All right.

12        Mr. Pass?

13        MR. PASS:  Your Honor, if I may.

14        I just want to know -- this is awfully loud -- who

15    are these questions going to be sworn by?  Are they going to

16    be sworn by a member of the Sheriff's Department?  Or are

17    they going to be sworn by a member of the Board of County

18    Commissioners?

19        THE COURT:  That's up to you.  You all will

20    designate somebody to swear them.

21        You know, in the interrogatory it was somebody

22    from the Sheriff's Office.  I think Mr. Slade doesn't care

23    really who swears it out.  He just wants to make sure that

24    whoever is doing so is binding your client.

25        MS. TOWNSLEY:  Yes, I can ensure --

1          MR. SLADE:  And is knowledgeable.

2          THE COURT:  And is knowledgeable.  He wants

3    somebody to come in and say, This is what the Sheriff does.

4    And then for him to be able to come in to trial later and

5    say, Look, here's what you said this is what the Sheriff

6    does.  That's your admission, that's what he wants to do.

7          And I don't think he cares whether it's Chad

8    Church or Mr. McDaniel or anybody else.  He wants somebody

9    to say, Here's the question about what the Sheriff's Office

10    does, here's what the Sheriff's Office does.  I so swear on

11    behalf of the County.  That's what he wants.

12          MR. PASS:  Your Honor, what I can tell you is we

13    will make our best efforts to have the most knowledgeable

14    person from the Board of County Commissioners swear to

15    that information.

16          THE COURT:  Okay.  As long as they're actually

17    swearing to the information and giving an actual answer that

18    is more than:  I don't know, that's outside the Board's

19    purview.  Right?

20          MS. TOWNSLEY:  We'll --

21          MR. PASS:  We'll make our best efforts.

22          THE COURT:  Does that work, Ms. Townsley?

23          MS. TOWNSLEY:  Yes.

24          THE COURT:  All right.  Mr. Slade?

25          MR. SLADE:  Yes.  I just -- I guess I just

31

1    reiterate my same concern, but I guess we'll -- we'll --

2         THE COURT:  That's why I have said multiple times,

3    if you all say -- if you come back with somebody with a

4    Board witness who says:  I don't know what these people are

5    talking about.  You're all going to be back in front of me.

6    And, you know, except for this time you made assurances that

7    you're going to try to find somebody with knowledge to be

8    able to swear to answers on behalf of the County.

9         And I'm removing the factor of surprise, so that

10   you can get the appropriate authority, so it'll be a little

11   bit less favorable the next time around.

12        MS. TOWNSLEY:  We appreciate it, Your Honor.

13        THE COURT:  Okay.

14        MR. SLADE:  The -- well, yeah, I don't have

15   anything to say on that issue.

16        But I was going to move on to whether -- or we

17   request payment of fees for the unprepared witness and the

18   time that went into taking this deposition that was,

19   arguably, spent without benefit.

20        THE COURT:  I understand that.  I'm not going to

21   grant that request at this time.  I don't think I have to.

22        I think Rule 37 is permissive in terms of what I

23   do.  And I don't know that I'd necessarily grant relief

24   under Rule 37, either.

25        I think what I'm trying to do is point the parties

1    in a more practical direction that gives you all sort of a

2    direction forward.

3            MR. SLADE:  And then my second issue is, I'm

4    wondering if the Court can issue an order -- and I'm kind of

5    going off the cuff here.

6            Can we -- because Plaintiffs can't move to say

7    that we have the wrong Defendant, correct?

8            THE COURT:  Correct?

9            MR. SLADE:  That has to be raised by Defendant.

10   Can we issue an order asking them to file that motion so

11   that we can get that resolved so that discovery can get

12   going.

13           Because I will be very frank, that if this boils

14   down to we have -- we need to name the Sheriff of Elbert

15   County in his official capacity, which is, as the law

16   states, is a suit against the County in all but name, then

17   we will certainly -- we will gladly issue a substitute party

18   motion.

19           I think that's allowed, as opposed to, like an

20   amendment, in this district.

21           And so --

22           THE COURT:  I don't know that it is, but --

23           MR. SLADE:  Okay.  I believe it is, but yes.

24           My point being is that we will gladly cooperate on

25   that basis.  If that is truly what's holding up discovery in

33

 1   this case, let's just get it resolved so that we can really

 2   just get to the merits of the issues.

 3            THE COURT:  Yeah.  I don't -- I mean, as I read

 4   the -- it's been a while -- I read the complaint a while ago

 5   and I read the scheduling order.

 6            As far as I could tell, all of the action that was

 7   alleged to have violated, either the ADA or -- I can't

 8   remember what the other statute invoked was, but it all had

 9   to do with Sheriff's Office conduct.

10            Is that right, Mr. Slade?

11            MR. SLADE:  That's correct.

12            THE COURT:  Okay.  So I don't know.  Ms. Townsley,

13   it seems like what Mr. Slade wants is some level of

14   certainty.

15            MS. TOWNSLEY:  Um-hmm.

16            THE COURT:  You know, if you think that the

17   Sheriff's Office is the right defendant in this matter, I

18   mean -- I don't know.

19            Do you think -- do you have a position on that?

20            MS. TOWNSLEY:  I do.

21            THE COURT:  Okay.  Who do you think is the right

22   defendant in this matter?

23            MS. TOWNSLEY:  The Sheriff's Office.

24            THE COURT:  Okay.  Then in that case, perhaps Mr.

25   Slade should file a motion to amend that asks for the

34

1   Sheriff's Office to be -- I mean, is that something that --

2   it seems like it would create fewer of these disputes going

3   forward if everyone's on the same page and believes that the

4   Sheriff's Office is the right defendant in this case.

5          MS. TOWNSLEY:  Your Honor, I would hate to

6   interrupt and, once again, I'm so sorry.

7          But I think we are getting into some work product

8   that is privileged.

9          THE COURT:  How can this be work product?

10         MR. PASS:  Strategy of the case.

11         THE COURT:  You're taking a position one way or

12   the other.  I'm not asking what your internal strategy is.

13         I'm asking what your position is as to who the

14   correct Defendant is in this case.

15         MR. PASS:  And I -- and I respectfully believe

16   that some of that is case strategy.

17         MS. TOWNSLEY:  My position, Your Honor, is that

18   the Sheriff's Office was the proper party from day one.

19   Both entities could have been sued if this had been a

20   question.

21         This information was known to Plaintiff's Counsel

22   when he wrote the complaint.  And we've gone through a

23   significant period of discovery predicated on the Board

24   being the defendant here sued.

25         So this is going to restart the entire case, based

1    on him not doing his research, in my opinion.

2         THE COURT:  I don't know if that's necessarily

3    that.

4         Really what should have happened, I think, Ms.

5    Townsley, earlier on -- and I'm not making a ruling on

6    this -- but in a world where everyone is being -- is not

7    trying to hide the ball, you have -- this is what the

8    original 26(f) conference is about, right?

9         MS. TOWNSLEY:  Um-hmm.

10        THE COURT:  You sued the wrong people.  Find the

11   right people.

12        I agree that these are the right people.  You

13   know, that's the discussion that's supposed to happen at the

14   26(f) conference.  I wasn't even the magistrate judge when

15   the 26(f) conference happened in this case.

16        MS. TOWNSLEY:  I was not the attorney that

17   participated, either, unfortunately.

18        THE COURT:  So I don't know that I agree that I

19   would hold that against Mr. Slade one way or the other.

20        On the other hand, Mr. Slade, you've gone this far

21   with the County Commissioners as the -- as the defendant, I

22   mean, it seems, with some reservation that I don't frankly

23   understand, that Ms. Townsley's position is that the

24   Sheriff's Office is the correct Defendant.  But on the other

25   hand, right, that entails a position that the Sheriff's

1    Office is a distinct entity from the County.  And so you've

2    got all these discovery responses that bind the County and

3    doesn't really bind the Sheriff's Office, then we're getting

4    into a strategy decision as to, Well, you know, if I could

5    make them sort of say, Well, yeah, this one's behind the

6    Sheriff's Office, too, then I think all problems would be

7    resolved.

8            But I don't think I can make them do that either.

9            So with respect to your question, I don't know

10   when they're going to raise that.

11           Do you know when you're going to raise it, Ms.

12   Townsley?

13           MS. TOWNSLEY:  Relatively soon.

14           THE COURT:  What does relatively -- what does that

15   mean?  By way of Rule 56 motion?

16           MS. TOWNSLEY:  Yeah.  My best guess would be

17   within 60 days via Rule 56.

18           THE COURT:  So it looks like it's going to be part

19   of their dispositive motion.  That's about, I think, the

20   best that I can do with respect to that particular issue,

21   Mr. Slade.

22           MR. SLADE:  And just to clarify -- and as I'm

23   putting the cart before the horse -- is it Defendant's

24   position that they would oppose a motion to substitute the

25   party if Plaintiff wanted to resolve that?

1          THE COURT:  That I don't know.

2          MS. TOWNSLEY:  Yes.

3          THE COURT:  You would oppose a motion to that?

4          MS. TOWNSLEY:  I would.

5          THE COURT:  Okay.  I don't know what the

6   backgrounds are, and I don't think this is the place to get

7   into it.

8          Anything else, Mr. Slade?

9          MR. SLADE:  Yes.  Just one motion.

10         Ms. Townsley and I have been discussing extending

11  the discovery deadlines in this case, given that -- and I'm

12  basically just making an oral motion to extend them now,

13  essentially the basis being that because of the 30(b)(6)

14  deposition testimony not being ready yet, it will take some

15  time to prepare the written questions, as well as serve

16  those and get responses.  Particularly the expert disclosure

17  deadline, we have a retained expert that is -- requires the

18  deposition testimony that's binding on the County to render

19  an opinion.

20          My proposal was 60 days' extension to both

21  affirmative rebuttal, expert deadlines, discovery cutoff,

22  and dispositive motions to prevent, you know, further -- or

23  just to accelerate further motions practice.

24          I want to raise that orally today.

25          THE COURT:  Any objections, Ms. Townsley?

38

1          MS. TOWNSLEY:  Not at this time.

2          THE COURT:  So I will put that as an oral motion.

3          Let me pull up the last order I made with respect

4    to deadlines, which is ECF Number 80.

5          So the way this will work -- look, in the minutes,

6    Ms. Price, is that Mr. Slade, so the plaintiff, has made a

7    motion to modify the scheduling order for good cause.

8          The Court orders that the affirmative expert

9    disclosure deadline be extended to -- it's November 5th of

10   2025.

11         The rebuttal expert disclosure deadline will be

12   November 26th of 2025.

13         The discovery cutoff will be January 5th of 2026,

14   which makes the dispositive motions deadline the February

15   4th of 2026.

16         Does that work, Mr. Slade?  I think that's 60

17   days.

18         MR. SLADE:  Yes.  I'm double-checking.

19         November 26th, I believe, does not land on

20   Thanksgiving.

21         THE COURT:  It's the day before Thanksgiving.

22         MR. SLADE:  The day before?  Okay.  Then no.

23         Yeah, that's fine.

24         THE COURT:  Any problem with that time frame, Ms.

25   Townsley?

39

1                    MS. TOWNSLEY:  No.

2                    THE COURT:  And also note in the minutes that this

3      oral motion was made, without objection from the defendant.

4                    Anything further I need to take care of today, Mr.

5      Slade?

6                    MR. SLADE:  Nothing further.  Thank you, Your

7      Honor.

8                    THE COURT:  Ms. Townsley?

9                    MS. TOWNSLEY:  Nothing further.  Thank you, Your

10     Honor.

11                   THE COURT:  We'll be in recess then.  Thank you.

12                   (WHEREUPON, the hearing concluded at 10:42 a.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                         CERTIFICATE

 2            I, Carol Patterson, certify that the foregoing

 3    transcript from the electronic sound recording from the

 4    proceedings is in compliance with Chief Justice Directive

 5    05-03.

 6                         Dated:  September 8, 2025

 7    /s/ Carol Patterson
      CAROL PATTERSON
 8    Transcriptionist

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**PATTERSON TRANSCRIPTION COMPANY**
scheduling@pattersontranscription.com